Filed 9/26/13  P. v. Romero CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046089 |
| v. | (Super. Ct. No. 09NF2172) |
| CESAR AUGUSTO ROMERO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed as modified and remanded for resentencing.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Cesar Augusto Romero appeals from a judgment convicting him of one count of committing a lewd act against a child, in violation of Penal Code section 288, subdivision (a). (All further statutory references are to this code.) He was tried on four counts of violating that statute, but was acquitted on one count while the jury hung on two others, both of which were subsequently dismissed. Romero was sentenced to a term of six years in prison.

Romero argues the conviction must be reversed because (1) the Orange County Superior Court lacked jurisdiction over the charged crime, which was alleged to have occurred in Los Angeles County, (2) trial of the charged crime in Orange County violated his rights under the vicinage clause of the Sixth Amendment to the United States Constitution, (3) there was insufficient evidence to support a determination defendant acted with the intent to arouse, appeal to, or gratify lust, passion or sexual desire, and (4) the standard instruction given to the jury about evaluating the credibility of witnesses impermissibly shifted the burden of proof to him.

Following oral argument, we asked the parties to brief the following issues: (1) the extent to which this court has authority, pursuant to section 1260 or otherwise, to (a) reduce defendant's conviction to a misdemeanor count; (b) reduce the sentence imposed; or (c) remand the case for a new trial; (2) whether battery (§ 242) is a lesser included offense of lewd and lascivious act on a child (§ 288, subd. (a)); and (3) whether the trial court abused its discretion by sentencing defendant to the mid-term of six years, rather than the lower term of three years.

We conclude Romero's challenge to the jurisdiction of the Orange County court is misplaced. The statutes he relies upon govern venue, not jurisdiction, and any objection Romero had to the venue was required to be raised in the trial court, where it could have been addressed and potentially resolved. Romero's failure to do that resulted in a forfeiture of the objection. Romero's related complaint about the denial of his rights under the vicinage clause of the Sixth Amendment is not cognizable in this appeal,

2

because our Supreme Court has held that clause is not applicable to the states through the Fourteenth Amendment. We also reject Romero's contention the jury instruction relating to witness credibility was flawed. When we consider the single sentence he relies upon in the context of the challenged instruction as a whole, we conclude it cannot fairly be interpreted in the manner he suggests.

On the merits, we conclude the Romero's conviction must be reduced to a misdemeanor count of battery, and consequently order the case remanded to the trial court for sentencing on that misdemeanor conviction. The evidence in this case is insufficient to support the jury's determination Romero acted with lewd intent toward his victim in the incident underlying the single count on which he was convicted. There is simply no evidence, other than Romero's expression of the romantic hope he and his victim might become a couple *in the future*, to support the inference that his act of kissing her was carried out with a lewd intent.

In light of our resolution of that issue, we need not address the issue of whether the court abused its discretion in sentencing Romero on the felony count. Instead, the case is remanded to the trial court with instructions to resentence him on the misdemeanor count.

FACTS

Romero was charged by information with four felony counts. Counts 1 and 2 alleged violations of section 288, subdivision (b)(1) (forcible lewd act on a child under the age of 14) involving Jane Doe 1; count 3 alleged a violation of section 288, subdivision (a) (lewd act upon a child under the age of 14) involving Jane Doe 2; and count 4 alleged a violation of section 288, subdivision (a) (lewd act upon a child under the age of 14) involving Jane Doe 3. Counts 1 and 2 were later amended during trial to

3

allege violations of subdivision (a) of section 288, rather than violations of subdivision (b)(1) of that section.

Counts 1 and 2 involved conduct which occurred at a water park in Orange County, while counts 3 and 4 involved conduct allegedly occurring in the parking lot of the church Romero attended in Lawndale, which is located in Los Angeles County. All four counts were prosecuted together in the Orange County Superior Court. According to Romero, the Los Angeles District Attorney agreed to "waive jurisdiction pursuant to Penal Code section 784.7 . . . for charges which occurred in Lawndale."

The jury acquitted Romero of the charge in count 3 and deadlocked in favor of acquittal on the charges in counts 1 and 2. The court declared a mistrial as to those counts, which were later dismissed. But the jury convicted Romero on count 4, involving Jane Doe 3. The evidence underlying that count reflected that Jane Doe 3 met Romero when she was approximately 10 or 11 years old. He was in his 20's and played piano at her church. He also gave piano lessons to her brother. Starting at about age 11, Jane Doe 3 would sometimes talk and text with Romero about music and other subjects, but after a while her parents found out about it and told her they didn't approve of the friendship and wanted her to have friends her own age. Romero acknowledged he had begun having strong feelings for Jane Doe 3 before her parents put a stop to the communications.

Jane Doe 3's father complained to the church about Romero's conduct and Jane Doe 3 was later told by a church representative that the church had instructed Romero not to talk to her. For approximately four months, Romero was also barred from participating in certain church activities, as punishment for having contact with Jane Doe 3. At some point after Romero's church restriction was lifted, he gave Jane Doe 3 his cell phone. At that time, he believed a relationship could be developed between the two of them. Jane Doe 3 understood these resumed communications were intended to be "secret," because she knew Romero could get in trouble for them, although he did not specifically ask her to keep them secret.

4

When Jane Doe 3 was approximately 12 years old, Romero kissed her on the lips in the church parking lot after an evening service. Her mouth was closed. She testified she had not known Romero intended to kiss her, did not want him to kiss her, and was shocked and was scared by it. She thought it was wrong and cried after it happened. But she did not tell either her mother or her father about the kiss, because she was embarrassed and "didn't want to have problems with stuff because it would become a big situation."

Jane Doe 3 also testified that when she was 12 years old (it is not clear from the record whether this was before or after the kiss), Romero had told her that when she was older, maybe the two of them could be together "as a couple." Romero himself acknowledged in an interview with a police officer that he had told Jane Doe 3 he liked her very much and was "going to wait for you." He later told the officer who interviewed him that he continued to have strong feelings for her.

DISCUSSION

1. *Romero Waived any Objection to Trial in Orange County.*

Romero's first contention is that the trial of count 4, which was based on conduct which allegedly occurred in Los Angeles County "exceeded the scope of the [Orange County court's] jurisdiction under section 784.7." (Original capitalization omitted.) He begins his analysis by referencing section 777, which states that "the jurisdiction of every public offense is in any competent jurisdictional territory of which it is committed," and section 691, subdivision (b), which defines a court's "'jurisdictional territory'" as "the city and county, county, city, township, or other limited territory over which the criminal jurisdiction of the court extends . . . , and in case of a superior court [as] the county in which the court sits." Romero then characterizes section 784.7 as providing an "exception" to these jurisdictional limitations, by allowing certain crimes

5

allegedly committed in one county to be joined for trial with others of the same type committed by the same defendant in a different county, but only after the court in which the trial is to take place holds a mandatory hearing pursuant to section 954. Romero's claim is that because the trial court in this case did not hold such a hearing, it did not obtain jurisdiction over the Los Angeles crime under section 784.7.

However, Romero's argument reveals a significant misconception about the purpose of these statutes. Despite what is concededly a liberal sprinkling of the word "jurisdiction" throughout all of them, none of them actually *governs* jurisdiction in the fundamental sense. Rather, the subject addressed by each of these statutes is *venue*. As explained in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1055, the term "territorial jurisdiction" used in sections 777 and 691 equates to venue, and while "[v]enue or territorial jurisdiction establishes the proper place for trial, [it] is not an aspect of the fundamental subject matter jurisdiction of the court and does not affect the power of a court to try a case." (See also *People v. Simon* (2001) 25 Cal.4th 1082, 1096 (*Simon*).)

In *Simon*, our Supreme Court explained that "[i]n California, a superior court has subject matter jurisdiction with regard to any felony offense committed within the state, no matter where the offense was committed." (*Simon*, *supra*, 25 Cal.4th at p. 1097, fn. 8.) Such plenary subject matter jurisdiction is necessary, because "[i]f only the court or courts designated by the relevant venue statute possessed subject matter jurisdiction over the proceeding, 'no change of venue from the locality could be valid, for subject matter jurisdiction cannot be conferred on a court . . . .'" (*Id.* at p. 1096.) Thus, "a change of venue may be ordered in a criminal case under appropriate circumstances . . . ." (*Id.* at p. 1097.)

The distinction between jurisdiction and venue is significant here because Romero is asserting this claim for the first time on appeal. While a court's lack of subject matter jurisdiction cannot be waived – a corollary of the rule that fundamental jurisdiction cannot be "'conferred on a court'" (*Simon*, *supra*, 25 Cal.4th at p. 1096) –

6

and thus alleged defects in a court's subject matter jurisdiction may be raised for the first time on appeal, a different rule applies to defects in venue. As our Supreme Court has expressly held, "a defendant who fails to raise a timely objection to venue in a felony proceeding forfeits the right to object to venue—either at trial or on appeal." (*Id.* at p. 1104.) That is what occurred here.

*2. The Vicinage Clause of the Sixth Amendment to the United States Constitution is Not Applicable.*

Romero also contends that his "right to a representative jury drawn from the community where the offense has occurred is a fundamental right inherent in the vicinage clause [of the Sixth Amendment to the United States Constitution]." He has asked us to take judicial notice of census statistics reflecting that the percentage of Hispanic and Latino residents in Los Angeles County was significantly higher than it was in Orange County at the time of his trial, and relies on those statistics to support a contention that the jury pool in Orange County could not have produced a jury which fairly represented the community where his offense occurred. Based on those premises, he asks us to conclude that his trial in Orange County violated his right under the Sixth Amendment's vicinage clause.

However, as Romero concedes, our Supreme Court held in *Price v. Superior Court*, *supra*, 25 Cal.4th at page 1059 (*Price*), that "because the vicinage requirement of the Sixth Amendment is not a fundamental and essential feature of the right to jury trial, it was *not made applicable to the states by incorporation through the Fourteenth Amendment.*" (Italics added; see also *People v. Thomas* (2012) 53 Cal.4th 1276, 1288 [declining to revisit the holding].) We are bound by that holding. And while Romero seems to be suggesting *Price* is distinguishable, on the ground it did not "specifically consider the connection between the vicinage clause and the fair-cross-section requirement of the Sixth Amendment," what he forthrightly contends is the

7

opposite of what Price holds:  i.e., "that *the viciniage clause*, including its fair-cross-section counterpart contained in the Sixth Amendment . . . *is applicable to the states through the Fourteenth Amendment.*"  (Italics added.)


*3.  CALCRIM No. 226 Did Not Alter the Burden of Proof.*

Romero also contends his conviction must be reversed because the court improperly instructed the jury concerning its obligation to assess the credibility of witness testimony.  Romero's claim focuses on a single sentence contained in CALCRIM No. 226, the form instruction addressing the jury's obligation to evaluate the credibility of witnesses, and argues that sentence effectively shifts the burden of proof to him by telling the jury it may assume the witnesses against him are testifying truthfully unless he provides affirmative evidence suggesting their "character for truthfulness" has been questioned among the people who know them.  We reject the argument.

CALCRIM No. 226 is a lengthy instruction which begins with the adjuration to the jury that "[y]ou alone must judge the credibility or believability of the witnesses.  In deciding whether testimony is true and accurate, use your common sense and experience.  You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have.  [¶] You may believe all, part, or none of any witness's testimony.  Consider the testimony of each witness and decide how much of it you believe."  The instruction goes on to explain that the jury "may consider anything that reasonably tends to prove or disprove the truth or accuracy" of testimony, and then lists several specific factors the jury "may consider" in evaluating testimony.  The instruction directs the jury in no uncertain terms not to "automatically reject testimony just because of inconsistencies or conflicts," and explains that it must instead "[c]onsider whether the differences are important or not."

CALCRIM No. 226 then continues with the sentence Romero challenges:  "*If the evidence establishes* that a witness's character for truthfulness has *not been*

8

*discussed* among the people who know him or her, you may conclude *from the lack of discussion* that the witness's character for truthfulness is good." (Italics added.) The instruction then concludes with some additional guidelines, including the suggestion that if the jury decides a witness deliberately lied about something significant, it "should consider not believing anything that witness says."

By asserting that his right to due process was violated by a single sentence contained in this lengthy instruction, Romero has set himself up for a difficult task – and then failed to perform it. As the Attorney General correctly points out, the propriety of any jury instruction cannot be evaluated in the abstract; instead, such a claim must be considered in the context of the instructions given as a whole. "In reviewing a challenge to an instruction, we consider the instructions as a whole, in light of one another, and do not single out a word or phrase, and '"assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given."'" (*People v. Holmes* (2007) 153 Cal.App.4th 539, 545-546.) Thus, when an appellant "fails to set forth the other instructions given[, he] does not properly analyze the issue." (*Ibid.*) Here, Romero not only failed to set forth the *other* instructions given, he didn't even set forth the entirety of CALCRIM No. 226.

But there is an obvious flaw in Romero's claim as well. His primary assertion is that while the challenged sentence of CALCRIM No. 226 "may suggest [to the jury] that the instruction is only applicable when evidence *affirmatively establishes* that the witness' character for truthfulness has not been discussed, as opposed to a situation where there is an absence of evidence . . . it is most likely for the jury to conclude . . . that if the admitted evidence *does not establish* that the witness' character for truthfulness has been discussed, they may assume the witness is credible." (Italics added.) That assertion is simply inconsistent with the wording of the challenged sentence. That sentence is conditioned on an affirmative evidentiary showing: "If the evidence *establishes* . . . ." (Italics added.) Hence, contrary to Romero's "most likely"

9

scenario, the sentence does not offer the jury any direction in situations where the evidence *does not establish* whether the witness's character for truthfulness has been discussed – let alone an invitation to indulge in unsupported assumptions. We cannot presume, as Romero would apparently have us do, that the jury failed to pay careful attention to the instruction's wording. "[A]bsent some indication in the record, we must presume that the jury understood and applied the[] instructions." (*People v. Jablonski* (2006) 37 Cal.4th 774, 806-807.)

Moreover, the suggestion that the jury would construe the sentence as inviting it to make unsupported assumptions, based on a *lack of evidence*, is inconsistent with the instruction as a whole, and must be rejected on that basis as well. The instruction otherwise emphasizes the importance of jurors engaging in a reasoned evaluation of witness credibility based on common sense, experience, witness demeanor, and the content of the witness's testimony, including its consistency or inconsistency both internally and as compared to other evidence. There is no reasonable likelihood the jury would have understood the instruction as also inviting them to indulge in unsupported assumptions, in the manner suggested by Romero. (See *People v. Houston* (2012) 54 Cal.4th 1186, 1229 ["[w]hen considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner"].)

*4. The Evidence was Insufficient to Demonstrate Romero Acted With Lewd or Lascivious Intent When he Kissed Jane Doe 3.*

A conviction for violation of section 288, subdivision (a), requires that the defendant have committed a "lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, *with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person*

10

*or the child . . . .*"  (Italics added.)  As explained in *People v. Martinez* (1995) 11 Cal.4th 434, 445, "*any* touching of an underage child is 'lewd or lascivious' within the meaning of section 288 where it is committed for the purpose of sexual arousal."

Romero contends, however, that the evidence adduced at trial in this case was insufficient to support the conclusion that his act of kissing Jane Doe 3 was done with the intention of arousing, appealing to, or gratifying the lusts, passions or sexual desires of either one of them.  We agree.

What Romero did was place a brief kiss on the closed mouth of a 12-year-old girl.  There is no evidence suggesting he attempted to open her mouth, or use his tongue, or that the kiss was of any significant duration.  (Compare *In re R.C.* (2011) 196 Cal.App.4th 741, 750-751, "[u]nlike kissing without the use of tongues, which is an important means of demonstrating parental love and affection for a child, there can be no innocent or lovingly affectionate tongue kissing of a child by an adult"].)  Likewise, there is no evidence Romero made any attempt to touch or caress Jane Doe 3 (or himself) in any way when he kissed her, and no evidence he became aroused either during or after the kiss.  Put simply, there is no evidence the kiss consisted of anything more than the briefest peck, such as might be exchanged by close friends or family members as an expression of nonsexual affection.

Such conduct is easily distinguishable from the evidence of indisputably crude physical conduct exhibited by defendants in some of the other cases in which a conviction for violation of section 288, subdivision (a), was affirmed.  (E.g., *People v. Levesque* (1995) 35 Cal.App.4th 530, 543 [defendant allowed children to see his penis protruding from his shorts, later brought them to his home to view pornography, and pulled down one child's pants]; and *People v. Martinez, supra*, 11 Cal.4th at pp. 439, 453 [defendant approached victim from behind, pressed her body into his – which exhibited arousal – and then stuck out his tongue and tried to kiss her].)  And while it is true that a conviction under section 288, subdivision (a), does not *require* such overt conduct

(*Martinez*, at p. 442 [it is not necessary that a child be touched in an "inherently lewd manner"]), it is nonetheless required there be *some evidence* the defendant was acting with a lewd intent.

Where, as here, the defendant's physical conduct is equivocal, and might be consistent with a nonlewd intention, the jury can look to surrounding circumstances and rely on them to draw inferences about his intent. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1365 ["the jury could reasonably infer from the circumstances that [d]efendants kidnapped Castrillon and Arellano for the dual purposes of taking the victims (Castrillon and Arellano) *and* taking the BMW"].) In this case, however, the surrounding circumstances do not support that inference. The kiss – which took place in a public place, following a church service – was momentary and unaccompanied by any further inappropriate touching, or by any apparent effort to persuade Jane Doe 3 to submit or participate in such touching. And while Romero otherwise indicated a desire that the two of them might be "a couple" *in the future*, there is simply no suggestion he was making any effort to achieve that status immediately, or was attempting to gratify the *immediate* "lust, passions, or sexual desires" (§ 288, subd. (a)) of either himself or Jane Doe 3 at the time he kissed her. "In all cases arising under [§ 288], the People are required to prove that the defendant touched the child in order to obtain immediate sexual gratification." (*People v. Martinez*, *supra*, 11 Cal.4th at p. 452.)

The Attorney General emphasizes the "'romantic'" nature of Romero's interest in Jane Doe 3, noting that one witness had characterized it that way based on how Romero interacted with her at church functions – the way he looked at her and the songs he played for her on the piano. The Attorney General then asserts that a grown man's romantic inclination toward a 12-year-old girl is "absolute[ly] improp[er]" and points out that at the time Romero kissed Jane Doe 3, he was aware her parents disapproved. Based on those factors, the Attorney General concludes the jury was right to find Romero's kiss "troubling." We agree. But merely establishing Romero's conduct was wrongful or

12

troubling does not demonstrate it was lewd. Romance and sex, while frequently intertwined, are not interchangeable, and the presence of one does not automatically imply the other.

Nor are we persuaded by the Attorney General's suggestion the jury could have reasonably concluded Romero was engaged in "grooming" of Jane Doe 3. Although not explained, we presume "grooming" refers to what another court described as "the 'seduction process,' through which the sex offender uses attention, kindness, gifts, and money to lower his or her victims' inhibitions" in anticipation of the opportunity for future sexual abuse. (*United States v. Long* (D.C. Cir. 2003) 328 F.3d 655, 665.) But such strategic behavior, aimed at *future* sexual gratification, does not qualify as a violation of section 288. "[S]exual gratification must be presently intended at the time such 'touching' occurs." (*People v. Martinez*, *supra*, 11 Cal.4th at p. 444.)

Based on this record, we conclude there is insufficient evidence to support the determination Romero was acting with lewd and lascivious intent when he kissed Jane Doe 3, and thus insufficient evidence to support his conviction for violation of section 288, subdivision (a).

*5. This Court Can Reduce Romero's Conviction to a Conviction on the Lesser Included Offense of Battery.*

Section 1260 explicitly allows an appellate court to "reverse, affirm, or modify a judgment or order appealed from . . . ." Moreover, it is well settled that when an appellate court "'finds that insufficient evidence supports the conviction for a greater offense [it] may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense.'" (*People v. Bailey* (2012) 54 Cal.4th 740, 748, fn. omitted.)

And while the issue is currently pending before our Supreme Court (see *People v. Shockley*, review granted Mar. 16, 2011, S189462), we agree with *People v.*

*Thomas* (2007) 146 Cal.App.4th 1278 (*Thomas*), in concluding battery does qualify as a lesser included offense of committing a lewd act on a child in violation of section 288, subdivision (a).

As explained in *Thomas*, the test for determining a lesser included offense is well settled: "'[A]n offense is necessarily included in the greater offense when the greater offense cannot be committed without necessarily committing the lesser offense.' [Citation.] Thus, battery is a lesser included offense of lewd acts only if it is impossible to commit the greater crime of lewd acts without also committing the lesser offense of battery." (*Thomas*, *supra*, 146 Cal.App.4th at p. 1291.)

The elements of a section 288, subdivision (a), violation are satisfied by "'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*People v. Martinez*, *supra*, 11 Cal.4th at p. 452.) Section 242 defines battery as "any willful and unlawful use of force or violence upon the person of another." And as explained in *People v. Pinholster* (1992) 1 Cal.4th 865, 961, disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459, for purposes of a battery, "'[a]ny harmful or offensive touching constitutes an unlawful use of force or violence.'"

We have no trouble concluding that a defendant's act of touching an underage child with the intent of arousing sexual desires would *always* qualify as an inherently "harmful or offensive" touching, and thus that a perpetrator could not commit the former offense without also committing the latter. Consequently, battery qualifies as a lesser included offense of a defendant's violation of section 288, subdivision (a).

Battery can be committed by the slightest touch so long as that touch is harmful or offensive. (*People v. Myers* (1998) 61 Cal.App.4th 328, 335; *People v. Rocha* (1971) 3 Cal.3d 893, 899, fn. 12.) The injury or harm need not be physical; injury to the victim's feelings is sufficient. (*Id*. at pp. 899-900, fn. 12.) Moreover, the defendant need not have intended to cause the victim injury, or even be subjectively aware of the risk of

14

injury. (*People v. Hayes* (2006) 142 Cal.App.4th 175, 180.) Rather, the only mental state required is "'an intent to do the act that causes the harm . . . .'" (*People v. Lara* (1996) 44 Cal.App.4th 102, 107.)

This is exactly what the evidence establishes occurred here. Whether he intended to or not, Romero caused emotional harm and upset Jane Doe 3 when he abruptly kissed her in the church parking lot. She testified that his kiss was unexpected, unwanted, and made her cry. She thought it was wrong. That evidence is sufficient to support the conclusion this kiss amounted to a battery.

## DISPOSITION

The judgment is modified to reflect that Romero is convicted of battery in violation of section 242. As modified, the judgment is affirmed and the matter is remanded to the trial court with directions to resentence Romero on that conviction, prepare and amended abstract of judgment, and forward a certified copy to the Department of Corrections and Rehabilitation.

RYLAARSDAM, ACTING P. J.

I CONCUR:

THOMPSON, J.

15

IKOLA, J., Dissenting.

I respectfully dissent. In my view, the circumstantial evidence was sufficient to support the jury's implied finding that Cesar Augusto Romero acted with the requisite intent "to obtain immediate sexual gratification." (*People v. Martinez* (1995) 11 Cal.4th 434, 452.) The majority opinion improperly reweighs the evidence. I am further of the view that a Penal Code section 242[1] battery is *not* a necessarily included lesser offense of a section 288, subdivision (a) lewd act. Thus, even if the evidence were indeed insufficient to support the lewd act conviction (which it is not), we lack the authority to modify the sentence under section 1260. If the evidence is insufficient, the conviction should be reversed.

To the first point, the majority opinion correctly recites much of the circumstantial evidence bearing on Romero's intent, but essentially reweighs that evidence to conclude it was insufficient. Our conclusion, however, must be constrained by the well-worn principle that we view "'the evidence in the light most favorable to the prosecution'" to determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Catlin* (2001) 26 Cal.4th 81, 139.) "'[T]he appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] This standard applies whether direct or circumstantial evidence is involved." (*Ibid*.) Here, the evidence established that Romero's attraction to (or infatuation with) Jane Doe 3 was apparent to adult observers. Her parents, believing the contacts between Romero and Jane Doe 3 were inappropriate, told Jane Doe 3 of their disapproval, and complained to the church about his conduct. A church representative instructed Romero not to talk to Jane Doe 3, and barred defendant from participating in certain church activities as

---

[1] All further statutory references are to the Penal Code.

1

punishment for his contact with her. As the majority opinion notes, "Romero acknowledged he had begun having strong feelings for Jane Doe 3 before her parents put a stop to the communications." (Maj. opn. *ante*, at p. 4.) Another adult who had witnessed Romero's interactions with Jane Doe 3 at church functions described the interactions as romantic, because of how Romero looked at Jane Doe 3. And then Romero kissed 12-year-old Jane Doe 3 on the mouth — not on the cheek, not on the top of her head, not on her hand — but on her mouth.

Thus it was made apparent to the jury that (1) adults who had directly witnessed Romero's interactions with Jane Doe 3 had concluded the interactions were inappropriate and (2) the *type* of touching, a kiss on the mouth, is consistent with a sexual intent. In my view, a rational jury could conclude from all of the evidence that Romero harbored the requisite lewd intent at the time of the kiss. We must "'presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Catlin*, *supra*, 26 Cal.4th at p. 139.) The majority opinion departs from that standard, concluding that "[r]omance and sex, while frequently intertwined, are not interchangeable, and the presence of one does not automatically imply the other." (Maj. opn. *ante*, at p. 13.) But here, the jury concluded that romance combined with this type of physical touching *did* imply a sexual intent. On this evidence, I am not prepared to second-guess the jury's conclusion.

On the second point, whether battery is a necessarily included offense of a section 288, subdivision (a), lewd act, I also disagree with the majority opinion. I recognize the issue is pending before the California Supreme Court (*People v. Shockley*, review granted Mar. 16, 2011, S189462), and decisions in the Courts of Appeal are in conflict. (Compare *People v. Santos* (1990) 222 Cal.App.3d 723 [holding battery is not a lesser included offense] with *People v. Thomas* (2007) 146 Cal.App.4th 1279 [finding battery is a lesser included offense].) But contrary to the ipse dixit reasoning of the majority opinion I *do* have "trouble concluding that a defendant's act of touching an

2

underage child with the intent of arousing sexual desires would *always* qualify as an inherently 'harmful or offensive' touching." (Maj. opn. *ante*, at p. 14.) The "trouble" stems from the "long-standing rule," confirmed in *People v. Martinez*, *supra*, 11 Cal.4th at page 452, that "section 288 is violated by 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." Thus, tousling a child's hair, giving a child a bath, dressing a child, tickling a child, giving a child a fatherly hug, would all constitute a violation of section 288 provided the touching were done with a lewd intent. The specific intent of the perpetrator is the only element that criminalizes otherwise innocent and harmless behavior. The child may well enjoy the touching and welcome it. But the perpetrator's secret thoughts nevertheless criminalize the otherwise harmless act.

A battery under section 242, however, requires something more than "any touching." The touching required for a battery conviction must be "harmful or offensive." The types of touching mentioned above are not harmful or offensive to anyone if the perpetrator does not otherwise reveal his or her sexual intent. In common parlance, "offensive" means "giving painful or unpleasant sensations" or "causing displeasure or resentment." (Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 805.) Thus, because section 288 relies solely on the perpetrator's intent, and not on the nature of the touching, it is entirely possible to violate section 288 without "causing displeasure" to anyone, including the person subjected to the touching. Accordingly, under the traditional statutory elements test, a battery is *not* a *necessarily* included lesser offense of a section 288 lewd act. (*People v. Birks* (1998) 19 Cal.4th 108, 117 ["a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser"].)

As noted by the majority opinion, the evidence clearly established a battery. But a battery was not charged, the statutory elements test fails, and the accusatory pleading does not otherwise allege the elements of a battery. Accordingly, we lack the authority to modify the sentence under section 1260.


IKOLA, J.