Filed 5/3/12

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
      Plaintiff and Respondent, )
) S185305
      v. )
) Ct.App. 5 F056337
RAYSHON DERRICK THOMAS, )
) Madera County
      Defendant and Appellant. ) Super. Ct. No. MCR 10473
_____)

      In general, the proper venue in which to prosecute a criminal offense is the superior court of the county in which the crime was committed. (Pen. Code, § 777.) Penal Code section 781 provides that when a crime is committed "in part" in more than one county, or when "the acts or effects" constituting the crime or requisite to its commission occur in more than one county, the offense may be prosecuted in the superior court of any of those counties. (*People v. Posey* (2004) 32 Cal.4th 193, 199.)

      In the present case, defendant Rayshon Derrick Thomas lived and sold drugs in Madera County. He possessed a key and a receipt for a storage locker that was located in neighboring Fresno County. The storage locker contained drugs and a firearm. The Court of Appeal ruled that the drugs and firearm located in Fresno County did not provide a basis for prosecuting defendant in Madera County for possession for sale of a controlled substance and possession of a firearm by a convicted felon. We disagree with the Court of Appeal and conclude that Madera County was a proper venue in which to prosecute defendant.

1

## FACTS

A felony complaint was filed in the Madera County Superior Court on November 7, 2001, charging defendant Rayshon Thomas with possession of cocaine for sale (Health & Saf. Code, § 11351) and possession of a firearm by a convicted felon (Pen. Code, § 12021 subd. (a)(1)).

On June 17, 2002, prior to the preliminary hearing, defendant filed a "Motion to Dismiss Based on Improper Jurisdictional Territory," claiming that the case should be prosecuted in Fresno County, "where the contraband items were located." Defendant conceded that the Madera County Superior Court had subject matter jurisdiction over the charges, but disputed whether Madera County was a proper venue. Following an evidentiary hearing, the court denied the motion to dismiss.

A preliminary hearing was held in January 2003, at which defendant's parole agent, Raquel Merigian, testified that on November 2, 2001, she was riding in a patrol vehicle driven by Madera Police Officer Morrill when they saw defendant driving a red Honda Civic on Clinton Street in Madera County. (Merigian later testified at trial that this was suspicious because, the week before, defendant had declined to provide the registration for this vehicle, as required of all parolees, saying the vehicle was inoperable.) They stopped the vehicle, and a search of defendant's backpack revealed $12,500 in cash and a receipt from Derrel's Mini Storage. Defendant, who had told his parole agent he was unemployed, also had two cell phones and a pager as well as several receipts for rental cars. Madera Police Officer Robert Blehm testified that it is common for drug dealers to transport narcotics in rented vehicles and that cell phones and pagers are often used by narcotics traffickers. Madera Police Officer Jason Dilbeck, a gang liaison officer, testified that defendant was a member of the 916 Sac Town Bloods, a Madera County gang that engages in narcotics trafficking.

2

Although defendant had told his parole agent that he lived at 524 Adelaide Street, No. 103, in Madera County, his backpack contained several papers that bore his name and an address of 522 Adelaide Street, No. C. Merigian and Officer Morrill went to 522 Adelaide Street, No. C and discovered that a key they had seized from defendant opened the front door. The landlord confirmed that defendant resided there, and numerous bills and other mail bore defendant's name and that address. In the clothes dryer, Merigian found $741 in cash and two more receipts from Derrel's Mini Storage.

Officer Blehm went to Derrel's Mini Storage, which was located on Herndon Avenue in Fresno County, and opened the padlock on the storage locker specified in the receipts using a key seized from defendant. Inside the locker, Officer Blehm found a loaded Smith and Wesson stainless steel revolver wrapped in a handkerchief monogrammed with the initials "RT," as well as $13,000 in cash, a backpack containing 2.4 pounds of cocaine, and Rayshon Thomas's high school diploma. Officer Blehm believed defendant possessed the cocaine "for the purpose of sale," adding that the fact that there was a firearm in the storage locker supported that conclusion.

Defendant was held to answer and an information was filed on October 14, 2003 charging defendant with possession of cocaine for sale (Health & Saf. Code, § 11351) and possession of a firearm by a convicted felon (Pen. Code, § 12021, subd. (a)(1)), among other offenses. The information alleged as a sentence enhancement that in possessing the cocaine for sale defendant was personally armed with a firearm under Penal Code section 12022, subdivision (c).

Defendant filed a motion to dismiss pursuant to Penal Code section 995, arguing that "[t]he proper and only jurisdictional territory for prosecution of the 'possession' charges in the present matter is Fresno County." In denying the motion, the court relied on the evidence introduced at the preliminary hearing and

3

found venue to be proper in Madera County, reasoning that defendant was operating "a criminal enterprise trafficking in illegal narcotics whose home base or home office is in the City of Madera." The court observed: "We have Mr. Thomas living in the City of Madera . . . . His money is here. . . . His financing is here. He lives here. He is gang related to here. . . . The only thing absent is his inventory. And his inventory . . . is just across the county line on Herndon. . . . [A] jury could conclude beyond a reasonable doubt that he is in constructive possession in Madera of the drugs and the gun."

Following a jury trial, defendant was convicted of all charged crimes and sentenced to prison for a term of 33 years to life. The Court of Appeal reversed the judgment on the ground that "the possessory crimes in this case occurred in Fresno and, thus, the appropriate venue was Fresno County." We granted the People's petition for review.

## DISCUSSION

In general, the proper venue for the prosecution of a criminal offense is in the superior court of the county where the crime was committed. (Pen. Code, § 777 ["[E]xcept as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed."].) Penal Code section 691, subdivision (b) defines the "jurisdictional territory" of a superior court as "the county in which the court sits." The terms "venue" and "territorial jurisdiction" are synonymous, and a criminal offense generally should be prosecuted in the county in which the crime was committed. (*People v. Simon* (2001) 25 Cal.4th 1082, 1095-1096.) (Further undesignated statutory references are to the Penal Code.)

Venue is a question of law that is governed by statute. (*People v. Posey*, *supra*, 32 Cal.4th at pp. 201, 209.) "Venue does not implicate the trial court's

4

fundamental jurisdiction in the sense of *personal* jurisdiction, which is the authority of the court to proceed against a particular defendant in a criminal action [citations].  Neither does venue implicate the trial court's fundamental jurisdiction in the sense of *subject matter* jurisdiction, which is the authority of the court to consider and decide the criminal action itself [citation]." (*Id*. at p. 208.)  " 'If the crime is one over which California can and does exercise its legislative jurisdiction because it was committed in whole or in part within the state's territorial borders, California courts have jurisdiction to try the defendant. [Citation.]  Moreover, if the charge is brought in a competent court . . . , *that court, no matter where located in the state*, may have subject matter jurisdiction of the offense. [Citation.]' " (*People v. Simon*, *supra*, 25 Cal.4th at p. 1096.)  "Venue or territorial jurisdiction establishes the proper place for trial, but . . . does not affect the power of a court to try a case. [Citations.]" (*Price v. Superior Court* (2001) 25 Cal.4th 1046, 1055.)

"As past decisions recognize, venue provisions applicable to criminal proceedings serve a variety of purposes.  First, '[v]enue in the place where the crime was committed promotes the convenience of both parties in obtaining evidence and securing the presence of witnesses.' [Citation.]  Second, from the perspective of a defendant, statutory enactments that provide for trial in a county that bears a reasonable relationship to an alleged criminal offense also operate as a restriction on the discretion of the prosecution to file charges in any locale within the state that it chooses, an option that, if available, would provide the prosecution with the considerable power to choose a setting that, for whatever reason, the prosecution views as favorable to its position or hostile or burdensome to the defendant's.  As one leading criminal treatise explains:  'The principal justification today for the venue requirement of trial in the vicinity of the crime is to "safeguard against the unfairness and hardship involved when an accused is prosecuted in a

5

remote place." ' [Citations.] Finally, venue provisions also serve to protect the interests of the community in which a crime or related activity occurs, 'vindicat[ing] the community's right to sit in judgment on crimes committed within its territory.' [Citation.]" (*People v. Simon*, *supra*, 25 Cal.4th at p. 1095.)

There are statutory exceptions to the general rule that a crime should be prosecuted in the county where it is committed. (*People v. Simon*, *supra*, 25 Cal.4th at p. 1094, fn. 6.) One exception is section 781, which states: "When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory." Enacted in 1872, section 781 closed a loophole in the common law that had often made it difficult to prosecute a crime begun in one county but completed in another: "Time was when, if a crime consisted of a series of acts, a number of which were done in one county and one or more done in another, prosecution for the offense would fail unless such a number of the series of acts occurred in one of the counties as would constitute a complete offense. Section 781, *supra,* was conceived for the purpose of extending the lines of jurisdiction beyond the limits fixed by the common law and thus forestall the technical rule relating to venue in multiple element offenses. [Citation.] Under the current rule where only a part of a crime has been committed in one county and the other part or parts have been committed in another, venue lies where only a part of the crime was done." (*People v. Waid* (1954) 127 Cal.App.2d 614, 617; Annot., Construction and Effect of Statutes Providing for Venue of Criminal Case in Either County, Where Crime is Committed Partly in One County and Partly in Another (1953) 30 A.L.R.2d 1265, 1268 ["The controlling purpose of the statute is the abrogation of the rule of the common law that when an offense was constituted by a series of acts, a part of

6

which were done in one county and a part in another, there could be no prosecution in either, unless so much was done in the one as would constitute a complete offense. [Citations.]"].)

" 'Section 781 is remedial and, thus, we construe the statute liberally to achieve its purpose of expanding criminal jurisdiction beyond rigid common law limits. We therefore interpret section 781 in a commonsense manner with proper regard for the facts and circumstances of the case rather than technical niceties.' " (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1118.) The prosecution has the burden of proving the facts supporting venue by a preponderance of the evidence, and "on review, a trial court's determination of territorial jurisdiction will be upheld as long as there is 'some evidence' to support its holding." (*Id.* at p. 1117.)

The Attorney General argues that defendant committed the crimes of possessing cocaine for sale and possessing a firearm by a convicted felon "in part" in Madera County and "in part" in Fresno County because his possession of the receipts and key for the storage locker gave defendant constructive possession *in Madera County* of the cocaine and firearm located in the Fresno County storage locker. The Court of Appeal rejected this argument, acknowledging that defendant constructively possessed the drugs and firearm but stating: "It does not follow, however, that defendant constructively possessed the cocaine and firearm *in Madera*. Rather, . . . the law could fairly treat defendant as if he were in actual possession of the contraband, which was physically located and thus constructively possessed *in Fresno*."

"It is well established that one may become criminally liable for possession for sale . . . of a controlled substance, based upon either actual or constructive possession of the substance. [Citation.] Constructive possession exists where a defendant maintains some control or right to control contraband that is in the actual possession of another. [Citation.]" (*People v. Morante* (1999) 20 Cal.4th

7

403, 417; see *U.S. v. Manzella* (7th Cir. 1986) 791 F.2d 1263, 1266 ["the owner of a safe deposit box has legal possession of the contents even though the bank has actual custody"].) Although these authorities make clear that defendant constructively possessed the drugs and firearm that were found in Fresno County, the parties cite no California authority, and we are aware of none, that discusses whether the location of a defendant or the location of contraband in his or her constructive possession (or both) may establish a proper venue for prosecution. (Cf. *State v. Perez* (1993) 311 S.C. 542, 546, 430 S.E.2d 503 [venue was proper where the defendant had constructive possession of drugs located in a neighboring county].)

We need not decide whether constructive possession of contraband may be deemed to occur not only where the contraband is located but also wherever the defendant is located. Under section 781, Madera County was a proper venue if "the acts or effects thereof constituting or requisite to the consummation of" defendant's unlawful possession occurred in Madera County. That statutory language is sufficient to support venue in Madera County, as we explain below.

Several decisions interpreting section 781 have found proper venue in a county where "only preparatory acts have occurred" and where those preparatory acts were not themselves elements of the offense. (*People v. Simon*, *supra*, 25 Cal.4th at p. 1109.) One example is *People v. Price* (1991) 1 Cal.4th 324, 386, in which we held that Humboldt County was a proper venue in which to prosecute the defendant for a murder that occurred in Los Angeles County because the defendant had stolen firearms and committed other acts in Humboldt County to prepare to murder the victim in Los Angeles. The murder victim had testified against members of the Aryan Brotherhood prison gang. The defendant was a member of that gang who had just been released from prison. The prosecution introduced evidence that the defendant burglarized two residences in Humboldt

8

County, killing one of the occupants and stealing firearms, then robbed a theater before traveling to Los Angeles to shoot and kill the victim. We noted that "[u]nder section 781, a public offense may be tried in a jurisdiction in which the defendant made preparations for the crime, even though the preparatory acts did not constitute an essential element of the crime. [Citation.]" (*Id.* at p. 385.) The courts of Humboldt County had territorial jurisdiction to try the defendant for the Los Angeles murder because it could be reasonably inferred "that defendant committed acts in Humboldt County that were preparatory to the murder." (*Id.* at p. 386; see also *People v. Douglas* (1990) 50 Cal.3d 468, 493-494, overruled on other grounds in *People v. Marshall* (1990) 50 Cal.3d 907, 933, fn. 4 [defendant could be prosecuted in Orange County where defendant made arrangements and met the victims before driving to San Diego County where he murdered them]; *People v. Powell* (1967) 67 Cal.2d 32, 62-63 [venue proper in Los Angeles County because defendant kidnapped the victims there before taking them to Kern County where he murdered one of them].)

In addition to preparatory acts, we have also held that venue can be based on the *effects* of preparatory acts (what we have called "preparatory effects"). In *People v. Posey*, *supra*, 32 Cal.4th 193, a Marin County Sheriff's detective paged the defendant in San Francisco to arrange a drug purchase. The defendant telephoned the detective, who falsely said he was in Sonoma County when he actually was in Marin County. The defendant agreed to sell the detective cocaine base and later completed the sale in San Francisco. Some days later, the detective again paged the defendant, who telephoned the detective in Marin and agreed to another drug transaction in San Francisco. We held that the defendant could be prosecuted in Marin County for the drug sales that took place in San Francisco, reasoning that just as committing "preparatory acts" in the charging county is sufficient to establish venue under section 781, "[b]y the same token, the words

9

'effects . . . requisite to the consummation' of a crime establishing venue in a county should be liberally construed to embrace *preparatory* effects, such as the placement of a telephone call into a county leading to a crime" in another county. (*People v. Posey*, *supra*, at p. 219.)

Other cases have held that a defendant who commits a crime in one county with effects in another county that are "requisite to . . . the achievement of the [defendant's] unlawful purpose" may be tried in the latter county under section 781, even though the effects were not elements of the offense. (*People v. Megladdery* (1940) 40 Cal.App.2d 748, 775 (*Megladdery*), disapproved on other grounds in *People v. Simon*, *supra*, 25 Cal.4th 1082.) The defendant in *Megladdery* was convicted in Alameda County of soliciting an individual to bribe the Governor, even though the solicitation occurred in San Francisco. Referring to section 781's phrase "or the acts or effects thereof constituting or requisite to the consummation of the offense," the court said: "By the use of the word 'consummation' the legislature drew a distinction between an act or an effect thereof which is essential to the commission of an offense, and an act or effect thereof which, although unessential to the commission of the offense, is requisite to the completion of the offense — that is, to the achievement of the unlawful purpose of the person committing the offense." (*Megladdery*, 40 Cal.App.2d at p. 775.) In *Megladdery*, an attorney acting as an agent of the defendant repeated the solicitation of the bribe in Alameda County. This fact, the court held, was sufficient to support the conclusion that "acts requisite to the achievement or end of the unlawful purpose occurred in Alameda County," thereby establishing venue in Alameda County under section 781. (*Megladdery*, at p. 780.)

The court in *Megladdery* relied upon *People v. Graves* (1934) 137 Cal.App.1, in which the court held that the defendant, a member of the Los Angeles County Board of Supervisors, could be prosecuted in Los Angeles for

10

receiving a bribe in San Francisco to influence his vote on a flood control issue. The *Megladdery* court observed that "the dishonest vote was not an essential part of the crimes charged, and the crime was complete before the vote was given, but, nevertheless, it was held, and properly so, that Los Angeles had jurisdiction — the vote was a legal effect of the corrupt agreement, and that gave Los Angeles jurisdiction." (*Megladdery*, *supra*, 40 Cal.App.2d at p. 775.)

The court in *Megladdery* also relied upon *People v. Boggess* (1924) 194 Cal. 212, in which the defendant was convicted in Sacramento for filing a false statement in an application to sell shares of stock that was filed in the San Francisco office of the Commissioner of Corporations. The *Boggess* court held that the defendant could be prosecuted in Sacramento County under section 781 of the Penal Code because the application containing the false statement "was subsequently and in due course forwarded by the deputy in charge of the branch office in San Francisco to the principal office in Sacramento and finally filed there." (*Boggess*, *supra*, 194 Cal. at p. 218.) Although no essential element of the crime was committed in Sacramento, Sacramento was a proper venue because one of the effects of the crime was to transmit the application to Sacramento. (*Id.* at p. 220.)

The *Megladdery* court similarly relied upon *People v. Anderson* (1935) 3 Cal.App.2d 521, where the defendant was tried in Sacramento County for robbing a taxicab driver in Yolo County. The driver had picked up the defendant in Sacramento and taken him to Yolo County, where the defendant robbed the driver, stole the cab, and drove it back to Sacramento. The court in *Megladdery* noted that "the return of the defendant to Sacramento" constituted "an effect of the crime" within the meaning of section 781. (*Megladdery*, *supra*, 40 Cal.App.2d at p. 776.)

11

In the present case, we have no difficulty concluding that venue was proper in Madera County because defendant committed preparatory acts in Madera County and because the effects of defendant's unlawful possession of the drugs and firearm found in the Fresno storage locker would be felt in Madera County. The trial court reasonably concluded that defendant's possession for sale of the cocaine and possession of the firearm in the Fresno County storage locker was part of a larger plan to sell drugs in Madera County. Defendant's preparatory acts in Madera County included obtaining an apartment in addition to the residence he disclosed to his parole agent, in which cash was found hidden in a clothes dryer, and securing two cell phones and a pager.

In addition to preparatory acts, the effects of defendant's possession for sale of the cocaine and possession of the firearm would be felt in Madera County. The trial court found that Madera was defendant's "base of operations" and that he participated in gang activities there and sold drugs there. These findings implied that the court also concluded that defendant would use the firearm there. The information alleged, and the jury found, that in possessing the cocaine for sale, defendant was personally armed with the firearm discovered in the storage locker. Defendant lived in Madera and was a member of a Madera County gang that engaged in drug sales. When he was searched, defendant possessed a large amount of cash in addition to a key and the receipt for the storage locker containing the firearm and drugs. As noted above, defendant rented a second apartment that he had not disclosed to his parole agent where more cash was hidden. There was ample evidence to support the trial court's finding that defendant lived and sold drugs in Madera County: "The only thing absent is his inventory. And his inventory . . . is just across the county line on Herndon."

Permitting this case to be tried in Madera County satisfies the purposes of the venue requirement. It " 'promotes the convenience of both parties in obtaining

12

evidence and securing the presence of witnesses.' [Citation.]" (*People v. Simon*, *supra*, 25 Cal.4th 1082, 1095.) Defendant lives in Madera County, and all of the witnesses lived either in Madera County or neighboring Fresno County. It "provide[s] for trial in a county that bears a reasonable relationship" to the offenses. (*Ibid.*) There was evidence that the drugs constructively possessed by defendant would be sold in Madera and the firearm would be used there. There was no danger that defendant would be " ' "prosecuted in a remote place." ' [Citations.]" (*Ibid.*) And trial in Madera protected "the interests of the community in which a crime or related activity occurs." (*Ibid.*) The interests of the citizens in Madera County in punishing defendant for possessing cocaine to be sold in their community and for possessing a firearm to facilitate those drug sales are at least as strong as the interests of the citizens in Fresno County in punishing defendant for storing drugs and a firearm in their midst.

Defendant's contrary arguments are unavailing. Defendant argues that "California venue statutes must be construed narrowly," despite our pronouncements to the contrary that section 781 is remedial and is thus construed liberally. (*People v. Posey*, *supra*, 32 Cal.4th at p. 218; *People v. Gutierrez*, *supra*, 28 Cal.4th at p. 1118.) Defendant attempts to avoid the effect of these recent decisions by relying upon a statement in *People v. Bradford* (1976) 17 Cal.3d 8, 15 that "[o]ur venue statutes must be construed in light of the importance historically attached to *vicinage*." As support for this statement, *Bradford* relied in part on the assertion that the Sixth and Fourteenth Amendments to the federal Constitution "guarantee[] a defendant in a state criminal prosecution the right to be tried by a jury drawn from, and comprising a representative cross-section of, the residents of the judicial district in which the crime was committed." (*Ibid.*) But the continued validity of *Bradford*'s statement was called into question by our later holding in *Price v. Superior Court*, that "the vicinage clause of the Sixth

13

Amendment is not applicable to the states through the Fourteenth Amendment." (*Price v. Superior Court*, *supra*, 25 Cal.4th at p. 1065.)  Although defendant counters that the language in *Bradford* upon which he relies was "reiterated" in *People v. Betts* (2005) 34 Cal.4th 1039, defendant is mistaken.  In *Betts*, we said in a footnote that the Attorney General had argued that we should reconsider our decision in *Bradford* in light of our later holding in *Price*, but we concluded that "we need not resolve those issues."  (*Id*. at p. 1059, fn. 16.)  Similarly, we have no occasion in this case to reconsider our decision in *Bradford*.  At the same time, defendant provides no persuasive reason to depart from our more recent holdings that section 781 is construed liberally and that the Sixth Amendment vicinage requirement does not apply to the states.

Relying upon material that is outside the record on appeal, defendant argues that he was denied his right to a jury drawn from a fair cross section of the community because African Americans comprise a smaller percentage of the population in Madera County than in Fresno County.  Defendant did not raise this issue in the Court of Appeal, nor did defendant seek review of the issue in this court.  Accordingly, we decline to address it.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the Court of Appeal.

LIU, J.

WE CONCUR:  CANTIL-SAKAUYE, C. J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.

14

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Thomas
_____

**Unpublished Opinion** NP opn. filed 7/2/10 − 5th Dist.
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**
_____

**Opinion No.** S185305
**Date Filed:** May 3, 2012
_____

**Court:** Superior
**County:** Madera
**Judge:** John W. DeGroot
_____

**Counsel:**

Carlo Andreani, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Janet E. Neeley and Stephen G. Herndon, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Carlo Andreani
582 Market Street, Suite 811
San Francisco, CA  94104
(415) 398-9870

Stephen G. Herndon
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 327-0350