Filed 4/21/14  P. v. Matos CA2/6

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAUL VILLALON MATOS,<br><br>    Defendant and Appellant. | 2d Crim. No. B242333<br>(Super. Ct. No. 2010009351)<br>(Ventura County) |

Raul Villalon Matos appeals a judgment following conviction of selling cocaine base, with findings of three prior drug convictions, a prior serious felony strike conviction, and service of four prior prison terms.  (Health & Saf. Code, §§ 11352, subd. (a), 11370.2, subd. (a); Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)[1]  We affirm.

*FACTS AND PROCEDURAL HISTORY*

In 2006, Daniel Ihle became a confidential informant for the Ventura County Sheriff's Office to "work . . . off" a citation received for driving with a suspended license.  Ihle also served as a confidential informant in return for financial remuneration.  Sheriff's Detective Harry Laubacher supervised Ihle's informant activities.

In May 2007, Ihle informed Laubacher that Matos, whom he knew as "Popi," was selling cocaine in Los Angeles.  Ihle described Matos's height and weight,

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

and stated that Matos walked with a limp and spoke with a heavy accent. Ihle had known Matos and Matos's girlfriend, Patricia King, for approximately one month and had seen them possess crack cocaine. Ihle spoke with Matos in the English language and Matos appeared to understand the conversation. Matos and King provided their telephone numbers to Ihle.

On May 24, 2007, Ihle made a monitored telephone call to Matos and arranged a narcotics transaction at a fast-food restaurant in Los Angeles. Matos "never showed up" and later telephoned Ihle and stated that "it wasn't going to happen that day."

On May 30, 2007, Ihle made a second monitored telephone call to Matos from the Thousand Oaks sheriff's station. Laubacher recorded and overheard the telephone call. Matos agreed to sell Ihle "three ounces" for "five hundred dollars for an ounce." When Ihle offered to meet Matos the next day at Matos's hotel, Matos responded, "[I]t's good."

In the morning of May 31, 2007, Ihle made two recorded telephone calls to Matos, indicating that he had obtained $1,400 for "the three," and that he was leaving Thousand Oaks for Los Angeles. Matos responded, "All right."

Sheriff's deputies searched Ihle and his vehicle and fitted him with a wireless transmitter. They also provided him with marked currency for the drug transaction. Ihle then drove to the Continental Hotel in Los Angeles to meet Matos.

When Ihle arrived at the hotel, he telephoned Matos as well as King. Within 10 minutes, Matos walked from the hotel to Ihle's vehicle. Matos advised Ihle to wait a few minutes because "[t]he guy [will] come up with an ounce and a half more." A white Ford automobile soon appeared; Matos entered the automobile for several minutes, and then left and walked into the hotel.

Within 5 to 10 minutes, Matos returned to Ihle's vehicle. Matos asked Ihle to accompany him to the hotel, but Ihle refused. Matos then said he would "get out and call."

Within minutes, King left the hotel and walked to Ihle's vehicle. She and Matos entered Ihle's vehicle. Matos asked Ihle if he could "check the money." Ihle gave

2

either King or Matos the marked currency. King then removed baggies of cocaine base from her clothing and placed them on the center console. After a verbal cue from Ihle, sheriff's deputies appeared and arrested King and Matos. The baggies on the center console contained 24.81 grams of cocaine base. King had the marked currency in her pocket and, after her arrest, removed additional cocaine base from her underwear.

At trial, the prosecutor played the recordings of the May 30 and May 31, 2007, telephone calls between Ihle and Matos, as well as the recording of the drug transaction. Ihle testified that he recognized his voice and Matos's voice on the recordings.

Matos presented the expert opinion of Doctor Marlene Valter, a forensic psychologist, that he suffers from longtime schizophrenia and low intellect. Valter first interviewed Matos in 2008, when she concluded that he was incompetent to be tried on the present charges. She reinterviewed him prior to trial and believed that his condition had improved with medication, but that he continued to experience auditory hallucinations, among other symptoms.

The jury convicted Matos of selling cocaine base and found that he suffered three prior drug convictions, suffered six prior serious felony strike convictions, and served four prior prison terms. (Health & Saf. Code, §§ 11352, subd. (a), 11370.2, subd. (a); §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).) The trial court granted Matos's motion to strike five of the six prior serious felony strike convictions, pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530.[2] It then sentenced Matos to a prison term of 23 years, consisting of an upper five-year term (then doubled), nine years consecutive for the three prior drug conviction allegations, and four years consecutive for the four prior prison terms. The court imposed a $200 restitution fine, a $200 parole revocation restitution fine (stayed), a $50 laboratory fee, and a $150

---

[2] The six prior strike convictions concerned violent and brutal crimes that Matos committed against three women in 1984, including mayhem and assault with a deadly weapon. Two of the victims suffered permanent facial disfigurement. One victim's facial wounds required between 400 and 500 stitches to close.

drug program fee, and awarded Matos 2,423 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45; Health & Saf. Code, §§ 11372.5, 11372.7, subd. (a).)

Matos appeals and contends that the trial court erred by: 1) denying his motion to dismiss the proceedings for improper venue, and 2) refusing to instruct regarding entrapment (CALCRIM No. 3408) and a special instruction regarding aiding and abetting.

DISCUSSION

I.

Matos argues that the trial court erred by denying his motion to dismiss the prosecution for improper venue. He attempts to distinguish *People v. Posey* (2004) 32 Cal.4th 193, 221 [venue depends upon the presence or absence in a county of acts or effects constituting the crime or requisite to commission of the crime]. Matos also requests that we reconsider *People v. Chavarria* (2013) 213 Cal.App.4th 1364, 1370 [proper venue in county where confidential informant initiated telephone call to purchase drugs from defendant's accomplice in another county].

Venue is a question of law governed by statute. (*People v. Thomas* (2012) 53 Cal.4th 1276, 1282.) The prosecutor bears the burden of establishing the facts supporting venue by a preponderance of the evidence. (*Id.* at p. 1283.) We review the trial court's determination regarding venue for evidentiary support. (*Ibid.*; *People v. Chavarria*, *supra*, 213 Cal.App.4th 1364, 1369.)

Section 777 provides: "Every person is liable to punishment by the laws of this State, for a public offense committed by him therein . . . ; and except as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed." Section 781 also provides: "[W]hen a public offense is committed in part in one jurisdictional territory and in part in another jurisdictional territory, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction for the offense is in any competent court within either jurisdictional territory."

4

We construe section 781 broadly to achieve its intended purpose of expanding venue beyond the single county in which the crime may be said to have been committed. (*People v. Thomas*, *supra*, 53 Cal.4th 1276, 1283; *People v. Posey*, *supra*, 32 Cal.4th 193, 218.) "Under section 781, a public offense may be tried in a jurisdiction in which the defendant made preparations for the crime, even though the preparatory acts did not constitute an essential element of the crime." (*People v. Price* (1991) 1 Cal.4th 324, 385, superseded by statute on other grounds as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161-1165.)

The trial court properly denied Matos's motion because Ventura County is a proper venue for his prosecution. Ihle telephoned Matos from Ventura County and stated that he would be driving from Thousand Oaks to Los Angeles to purchase the cocaine. Although Ihle initiated the telephone calls, the negotiations for the sale of the cocaine occurred in both counties. (*People v. Chavarria*, *supra*, 213 Cal.App.4th 1364, 1371.) "But for that call, there could have been no sale. Because this constitutes some evidence sufficient to support the finding that preparatory acts or effects requisite to commission of appellant's crimes took place in Ventura County, his motion to dismiss for lack of proper venue in that county was properly denied." (*Ibid.*)

It matters not that the defendant in *Chavarria* participated in a *dispatch or delivery service* to make drugs available to residents in Ventura County. (*People v. Chavarria*, *supra*, 213 Cal.App.4th 1364, 1367.) This is a distinction without a difference; *Chavarria* rests upon the interpretation of section 781 as set forth in *People v. Posey, supra*, 32 Cal.4th 193, 221. The reasoning of *Chavarria* is sound and we decline to reconsider it.

## II.

Matos contends that the trial court erred by refusing to instruct with CALCRIM No. 3408 regarding entrapment, and refusing a special instruction regarding aiding and abetting.

The defense special instruction provides: "The test for liability is measured by whether a reasonable person in the defendant's position, with like education, intellect,

5

and mental function, would have or should have knowledge that his conduct was aiding and abetting the charged crime."

We independently review the trial court's decision regarding particular instructions. (*People v. Licas* (2007) 41 Cal.4th 362, 366 ["'We apply the independent or de novo standard of review to the failure . . . to instruct (regarding a defense)'"].) The trial court is not required to instruct concerning a defense, even at defendant's request, unless substantial evidence supports the defense. (*People v. Watson* (2000) 22 Cal.4th 220, 222-223 [defense of entrapment]; *People v. Federico* (2011) 191 Cal.App.4th 1418, 1422 [same].) Defendant bears the burden of producing evidence to establish an affirmative defense. (*People v. Salas* (2006) 37 Cal.4th 967, 982.)

In California, the test for entrapment is an objective one that considers the police conduct. (*People v. Smith* (2003) 31 Cal.4th 1207, 1213.) "Entrapment is established if the law enforcement conduct is likely to induce *a normally law-abiding person* to commit the offense." (*Ibid.*) Official conduct that does no more than offer the opportunity to the defendant is permissible; but it is impermissible for the police or their agents to pressure the defendant by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induct a normally law-abiding person to commit the crime. (*People v. Watson*, *supra*, 22 Cal.4th 220, 223; *People v. Federico*, *supra*, 191 Cal.App.4th 1418, 1422.)

The trial court declined to instruct regarding entrapment, stating, "[T]here's no evidence, period. It's a hope, but it's not evidence." The court did not err because the police conduct was "quite unexceptionable" (*People v. Smith*, *supra*, 31 Cal.4th 1207, 1212), and evidence of entrapment was "'minimal and insubstantial'" (*People v. Barton* (1995) 12 Cal.4th 186, 201 [concerning defense of unreasonable self defense]). Matos merely speculates that overbearing and badgering conduct may have occurred during unmonitored telephone calls and Ihle's prior contacts with him. Moreover, the California test for entrapment focuses upon police conduct, not the psychological state of the defendant. Matos was not denied the right to present a defense because he did not meet his burden of establishing sufficient evidence of entrapment.

In addition, the defense instruction relating Matos's cognitive function to aiding and abetting is argumentative and was properly rejected by the trial court. (*People v. Harris* (2013) 57 Cal.4th 804, 853; *People v. Wharton* (1991) 53 Cal.3d 522, 570.) "[I]nstructions that attempt to relate particular facts to a legal issue are generally objectionable as argumentative [citation], and the effect of certain facts on identified theories 'is best left to argument by counsel, cross-examination of the witnesses, and expert testimony where appropriate.'" (*Wharton*, at p. 570.) In any event, the court correctly instructed regarding the elements of aiding and abetting a crime. (CALCRIM Nos. 220 ["Reasonable Doubt"], 225 ["Circumstantial Evidence: Intent or Mental State"], 251 ["Union of Act and Intent: Specific Intent or Mental State"], 400 ["Aiding and Abetting"], 3428 ["Mental Impairment: Defense to Specific Intent or Mental State"].) Sufficient evidence supports Matos's conviction pursuant to an aiding and abetting theory. (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069 [an aider and abettor must act with knowledge of the direct perpetrator's unlawful intent and with an intent to assist in achieving those unlawful ends, and his conduct must in fact facilitate commission of the crime]; *People v. Beeman* (1984) 35 Cal.3d 547, 560.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

7

David M. Hirsch , Judge

Superior Court County of Ventura

_____

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.