Filed 9/19/25  P. v. Espinosa Ocampo CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DANIEL ANTONIO ESPINOSA OCAMPO, Defendant and Appellant. | A169456 (San Mateo County Super. Ct. No. 19-SF-011522-A) |

Daniel Antonio Espinosa Ocampo appeals from his convictions in San Mateo County Superior Court for organized retail theft (Pen. Code, § 490.4, subd. (a))[1] and receipt of stolen property exceeding $950 in value (§ 496, subd. (a)).  He contends that the venue for organized retail theft was improper in San Mateo County, and he challenges the sufficiency of the evidence that he received at least $950 in stolen property in one transaction, for purposes of his felony conviction under section 496, subdivision (a).  Because his challenges lack merit, we affirm his convictions.

---

[1] Undesignated statutory references are to the Penal Code.

1

## A.

On February 22, 2019, California Highway Patrol officers executed a search warrant on a house in Pinole, located in Contra Costa County. Espinosa Ocampo and his wife, co-defendant Karin Puertodeespinosa (Puerto de Espinosa)[2], were residing in the house. In the house, the officers discovered large quantities of brand new retail merchandise similar to what would be found at a CVS or Rite Aid store. Some of the items were stored on a shelving unit, some were stored in large plastic bins, and others were packaged in cardboard boxes with shipping labels listing Puerto de Espinosa as the sender. According to Sergeant Matthew Masciorini, who testified at trial, the presence of the retail items in numerous shipping boxes with shipping labels affixed indicated that the items were stolen and "somebody was fencing them out to another purchaser." Ultimately, the officers recovered approximately 10,000 items valued at over $100,000. Espinosa Ocampo and Puerto de Espinosa were arrested several months later, in September 2019.

To assist with creating an inventory of the retail items recovered from the house, Anna Marquez, an organized retail crime manager employed by CVS, scanned the items through a CVS register system. At trial, she testified that CVS places security stickers indicating the particular store number onto high-theft items and that those stickers would indicate the particular CVS store from which the item originated. When she

---

[2] The record is inconsistent with respect to Espinosa Ocampo's name. In the trial court, the charging documents and verdict forms refer to "Espinosaocampo," but briefs filed by his trial attorney reference "Espinosa Ocampo." For ease for reading, we refer to appellant as "Espinosa Ocampo." For similar reasons, we refer to his co-defendant, who is not a party to this appeal, as "Puerto de Espinosa."

was shown a photograph of some items recovered from the house—nine packages of Preparation H—Marquez testified that the stickers on the items indicated that they came from store number 9940, which was in the city of San Mateo.[3] Based on the photograph, she believed all the items came from "just one store," "[e]verything was together," and she did not recall that any other stores were involved. However, Marquez acknowledged that she had only specifically determined that the nine items depicted in the photograph had come from the San Mateo store.

On April 3, 2019, Sergeant Chris Laughlin of the San Mateo County Sheriff's Office conducted a traffic stop on a vehicle whose occupants, Lavett Williams and Erisha Johnson, were later determined by police to be "boosters" (shoplifters) working with Espinosa Ocampo and Puerto de Espinosa. From inside the car, Laughlin recovered approximately a thousand items of brand new makeup, medication, and other wellness products; the items had tags from CVS and Walgreens.

The items recovered from the car came from two stores in San Mateo County (a Walgreens and a CVS) and were determined to have a total value of over $21,500. Surveillance footage from the two stores, from the same day as the traffic stop, showed Williams and Johnson entering and leaving the stores with large tote bags without paying for anything.

After searching their cell phones, authorities discovered that Williams and Johnson worked closely with Espinosa Ocampo and Puerto de Espinosa. Between December of 2018 and April of 2019, Espinosa Ocampo sent to Williams about 80 messages with photos of retail items, some of which included prices. Johnson's

---

[3] The prosecution introduced an itemized receipt valuing the nine boxes of Preparation H at $296.91, but the receipt was not included in the appellate record. Because neither party disputes this valuation on appeal, we later refer to this evidence in our discussion.

3

phone contained 95 messages of a similar nature between February and April of 2019. In one exchange from February 17, 2019, for example, Espinosa Ocampo sent Johnson a photo of a retail wellness product; Johnson replied, " '[h]ow much,' " and Espinosa Ocampo responded with a dollar amount. Puerto de Espinosa sent hundreds of similar messages and photographs to Johnson and Williams. Shortly after the traffic stop, Johnson sent Puerto de Espinosa a message stating " 'stopped by police' " and " 'jail.' "

At trial, Laughlin, who was qualified as an expert on organized retail crime, opined that Espinosa Ocampo and Puerto de Espinosa were "actively working as a fence of stolen property for retail merchandise." In addition, Laughlin opined that Williams and Johnson were working for them as boosters. He explained that, in his experience, boosters generally work in groups of two or more and "travel [from] location to location, city to city, retail establishment to retail establishment, stealing whatever their particular fence wants." The boosters "will then meet up with [the] fence where they are paid out cash." The boosters work for the fence, who is "the person they have the most contact with in respect to what they are going to steal and how they are going to get paid."

## B.

The San Mateo County District Attorney's office charged Espinosa Ocampo with committing organized retail theft in violation of section 490.4, subdivision (a) and with receiving stolen property in excess of $950 in violation of section 496, subdivision (a). Section 490.4 prohibits, as relevant here, "[a]cts in concert with two or more persons to receive, purchase, or possess merchandise" from one or more merchant's premises, "knowing or believing it to have been stolen." (§ 490.4, subd. (a)(2).) Section 496, subdivision (a), provides that "[e]very person who buys or receives any property that has been stolen . . . ,

4

knowing the property to be so stolen . . . , or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen . . . , shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170." But "if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year." (§ 496, subd. (a).)

Generally, venue for a criminal prosecution is proper in the county where the crime was committed. (§ 777.) However, our Legislature has enacted various exceptions to the default rule. (See, e.g., *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1074 [listing examples].) When Espinosa Ocampo was initially charged, in September 2019, one such exception was former section 786.5, subdivision (a). The statute broadly authorized venue for theft, organized retail theft, or receipt of stolen property in any of multiple counties when the crimes are spread across the counties.[4] (Former § 786.5, subd. (a), as amended by Sen. Bill No. 94 (2019-2020 Reg. Sess.), Stats. 2019, ch. 25, § 29,

_____

[4] The former statute provided that venue "shall also include . . . the county where any act was done by the defendant in instigating, procuring, promoting, or aiding in the commission of a theft offense or a violation of Section 490.4 or Section 496 or in abetting the parties concerned therein. If multiple offenses of theft or violations of Section 490.4 or Section 496, either all involving the same defendant or defendants and the same merchandise, or all involving the same defendant or defendants and the same scheme or substantially similar activity, occur in multiple jurisdictions, then any of those jurisdictions are a proper jurisdiction for all of the offenses. Jurisdiction also extends to all associated offenses connected together in their commission to the underlying theft offenses or violations of Section 490.4 or Section 496." (Former § 786.5, subd. (a), as amended by Sen. Bill No. 94 (2019-2020 Reg. Sess.), Stats. 2019, ch. 25, § 29, eff. June 27, 2019.)

5

eff. June 27, 2019.) However, due to a sunset provision, the statute was repealed on July 1, 2021. (Former § 786.5, subd. (b); Stats. 2019, ch. 25, § 29.)

Because Espinosa Ocampo's first trial ended in a mistrial, he was tried again, in a second trial that did not begin until July 2023. By the time of the second trial, a subsequent version of section 786.5 had been enacted that was identical to the previous version except that it was limited to criminal actions "brought by the Attorney General." (Former § 786.5, added by Assem. Bill No. 1613 (2021-2022 Reg. Sess.), Stats. 2022, ch. 949, § 1, eff. Jan. 1, 2023.) Given that limitation, the version of section 786.5 in place at the time of Espinosa Ocampo's second trial did not authorize venue in a criminal action brought by a district attorney.[5]

## C.

In the trial court, Espinosa Ocampo unsuccessfully sought dismissal of the charges based on improper venue in San Mateo County. At the close of the evidence, he also unsuccessfully moved for acquittal based on insufficient evidence. After the jury found Espinosa Ocampo guilty on both counts, the trial court sentenced him to four months in county jail and two years of probation.

---

[5] Subsequent to Espinosa Ocampo's second trial, the Legislature amended section 786.5 to authorize jurisdiction in theft, receipt of stolen property, and organized retail theft offenses in prosecutions brought by local prosecutors. (See § 786.5, subd. (b), as amended by Assem. Bill No. 1779 (2023-2024 Reg. Sess.), Stats. 2024, ch. 165, § 1, eff. Jan. 1, 2025.) At the same time, the Legislature imposed additional procedural requirements for local prosecutions involving related offenses committed in multiple jurisdictions, including the requirement of a hearing in which the prosecution must present evidence that "all district attorneys in counties with jurisdiction over the offenses agree to the venue." (*Ibid.*)

# DISCUSSION

## A.

Although some venue statutes refer to "jurisdiction" or "jurisdictional territory," the terms are synonymous with venue and have nothing to do with personal or subject matter jurisdiction. (See *People v. Thomas* (2012) 53 Cal.4th 1276, 1283 (*Thomas*).) Venue establishes the proper place for trial but does not affect the court's power to try a case. (*Ibid.*)

The prosecution must prove the facts supporting the trial court's venue by a preponderance of the evidence. (*Thomas*, supra, 53 Cal.4th at p. 1283.) On appeal, we must uphold the trial court's venue determination if there is " 'some evidence' " to support it. (*Ibid.*; see also *People v. Beatty* (2018) 21 Cal.App.5th 1273, 1294 (*Beatty*).) We independently review legal determinations concerning venue. (See *People v. Betts* (2005) 34 Cal.4th 1039, 1057 (*Betts*).)

Espinosa Ocampo argues that venue in San Mateo County for organized retail theft was improper because, by the time of his trial, former section 786.5 had sunsetted, thus depriving the San Mateo County District Attorney of its "jurisdictional authority." We agree with the People, however, that venue in San Mateo County was proper under a different statute, section 781.

As relevant here, section 781 provides when "the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction for the offense is in any competent court within either jurisdictional territory." Enacted in 1872, the statute closed a loophole in the common law, where venue was proper only when all the elements of a crime were completed in the same county. (*Thomas*, *supra,* 53 Cal.4th at p. 1283.)

The statute is broad by design. Venue under section 781 is proper if acts preparatory to the crime occurred in the county

7

where the trial is held, or if " 'acts or effects thereof . . . requisite to the consummation' " of the offense occurred in that county, regardless of whether the acts or effects occurring in the county were elements of the crime. (*Thomas, supra*, 53 Cal.4th at p. 1284.) For example, in *People v. Reed* (1952) 113 Cal.App.2d 339 (*Reed*), the defendant was properly prosecuted in San Francisco County for sending a false telegram although the telegram itself was sent from Los Angeles. (*Id.* at pp. 354-355.) Venue was proper in San Francisco County because the defendant met with his associate in San Francisco to instruct her to travel to Los Angeles to send the telegram, and he placed one telephone call from Walnut Creek to San Francisco to dictate the contents of the telegram. (*Ibid.*; see also *People v. Posey* (2004) 32 Cal.4th 193, 220-221 (*Posey*) [holding that where the defendant had placed telephone calls to Marin County as part of negotiations leading up to the drug sales at issue, the telephone calls to Marin were " 'effects . . . requisite to the consummation' " of the crimes, rendering venue in Marin County proper under section 781].)

Courts have also held venue proper under section 781 so long as some act or effect requisite to the offense, although not committed personally by the defendant and not an element of the offense, occurs in the county of prosecution. For example, in *People v. Megladdery* (1940) 40 Cal.App.2d 748, 780 (*Megladdery*), overruled in part on other grounds by *Posey, supra,* 32 Cal.4th 193, the defendant negotiated a bribe in San Francisco but engaged an attorney located in Alameda County to assist him in repeating the solicitation for a bribe. *Megladdery* held that prosecution in Alameda County was proper under section 781 even though the defendant did not personally commit any acts there. (*Megladdery,* at p. 780; see also *Thomas*, *supra*, 53 Cal.4th at p. 1285 [discussing *Megladdery* and other case examples].) *People v. Chavarria* (2013) 213 Cal.App.4th 1364, 1366, 1371 held that where the defendant's accomplice negotiated a drug sale over the phone with an individual located in Ventura County,

venue in Ventura County was proper although the drugs were ultimately delivered in Los Angeles County and the defendant himself never took any actions with effects in Ventura County in connection with the offense. (See also *Beatty*, *supra*, 21 Cal.App.5th at pp. 1288, 1290-1291 [holding that although the defendant never personally took any actions with effects in Yolo County, venue there was nonetheless proper because his participation with an accessory who committed acts with effects in Yolo County was sufficient under section 781].)

Here, there were several acts or effects that made San Mateo County a proper venue under section 781. It is undisputed that, as part of his retail theft scheme, Espinosa Ocampo received property stolen from a San Mateo store. His boosters, Williams and Johnson, were arrested in San Mateo County with thousands of dollars of retail goods stolen from stores in San Mateo County. Because there was " 'some evidence' " to support venue in San Mateo County, we must affirm. (See *Thomas, supra*, 53 Cal.4th at p. 1283; *Beatty*, *supra,* 21 Cal.App.5th at pp. 1285-1286.)

We reject Espinosa Ocampo's argument that section 781 is inapplicable because another venue statute, section 786, subdivision (a), is a more specific provision and therefore controls. Section 786, subdivision (a) states, "If property taken in one jurisdictional territory by burglary, carjacking, robbery, theft, or embezzlement has been brought into another, . . . the jurisdiction of the offense is in any competent court within either jurisdictional territory." It is settled that section 786 overlaps with section 781, and venue may be proper under either. (See *People v. Campbell* (1991) 230 Cal.App.3d 1432, 1445 (*Campbell*).) Overlapping venue provisions are not unusual. (See, e.g., *Betts*, *supra*, 34 Cal.4th at p. 1058 [holding that both sections 781 and 790 "are proper sources of territorial jurisdiction" in a murder case]; *Campbell*, at p. 1445 [holding that

9

sections 781 and 786, subdivision (a), were both applicable to theft offenses].)

In sum, after former section 786.5 had sunset, and throughout Espinosa Ocampo's trial, section 781 provided a venue for the prosecution in San Mateo County. In light of our holding, we need not resolve Espinosa Ocampo's remaining arguments concerning retroactive application of the current version of section 786.5.

## B.

With respect to his felony conviction for receipt of stolen property, Espinosa Ocampo argues that the evidence was insufficient to support a felony conviction and thus it must be reduced to a misdemeanor under section 496, subdivision (a). Reviewing the record for substantial evidence (*People v. Thomas* (2023) 14 Cal.5th 327, 377-378), we disagree.

Espinosa Ocampo's specific contention is that the evidence was insufficient to prove that at least $950 worth of the property was stolen from San Mateo County. In his view, if venue was authorized under section 786, then the local prosecutor only had authority to charge crimes involving property stolen in San Mateo County. But he does not dispute that venue over the receipt of stolen property charge was proper under section 781, which authorizes venue so long as the crime involved some acts or effects in the county of prosecution. And venue is "not a substantive issue relating to the defendant's guilt or innocence of the crime charged." (*Posey*, *supra*, 32 Cal.4th at p. 208.) A felony conviction for receiving stolen property requires the jury to find that the defendant received stolen property worth more than $950 in a single transaction. (See *People v. Brown* (2019) 32 Cal.App.5th 726, 729, 733.) The location from which the property was originally stolen is not an element of the crime. (See § 496, subd. (a).) As a result, because Espinosa Ocampo does not challenge venue in San Mateo County for receipt of stolen

property under section 781, the origin of the stolen property he received matters not.

Here, although there was no direct evidence of such a transaction, the jury could reasonably infer from the record that Espinosa Ocampo received at least $950 worth of stolen property on a single occasion.  This was a sophisticated, large-scale operation.  The prosecution's expert, Sergeant Laughlin, testified that boosters work by going from "city to city, retail establishment to retail establishment, stealing whatever their particular fence wants" before meeting up with their fence to get paid.  Espinosa Ocampo possessed over 10,000 stolen retail items worth over $100,000.  His boosters, Williams and Johnson, had stolen over $21,500 in retail goods in a single day—the day they were arrested.  It is absurd to imagine that, in a theft operation of this magnitude, the boosters never delivered more than $950 worth of stolen goods to their fence.

Because we are unable to conclude that there is " ' "no hypothesis" ' " whatsoever upon which there was substantial evidence to support the conviction, we may not reverse.  (*People v. Thomas*, *supra*, 14 Cal.5th at p. 378.)

## DISPOSITION

The judgment is affirmed.

BURNS, J.

WE CONCUR:


JACKSON, P.J.
CHOU, J.

*People v. Espinosa Ocampo* (A169456)

11