MURRAY, J.
*1275 In this appeal from drug trafficking convictions, we address the question of whether the case against a drug supplier was tried in a proper venue. On two occasions, Detective Ryan Bellamy placed calls from Yolo County to Marc Costa in neighboring Sacramento County, from whom Bellamy, in his capacity as an undercover police officer, was seeking to purchase methamphetamine. On both occasions, Bellamy met Costa at a location in Sacramento County. Thereafter, Costa called defendant, who *1276 supplied Costa with methamphetamine while in Sacramento County. Then, while still in Sacramento County, Costa sold Bellamy the methamphetamine he had just obtained from defendant. Defendant was prosecuted in Yolo County.
A jury found defendant guilty of two counts of transporting methamphetamine ( Health & Saf. Code, § 11379, subd. (a) ; counts 1 & 4), two counts of sale of methamphetamine ( Health & Saf. Code, § 11379, subd. (a) ; counts 2 & 5), and two counts of possession of methamphetamine for sale ( Health & Saf. Code, § 11378 ; counts 3 & 6). At a bifurcated proceeding, the trial court found that the prosecution proved various recidivist enhancements beyond a reasonable doubt. Defendant was sentenced to an aggregate determinate term of 16 years imprisonment.
On appeal, defendant asserts that the judgment must be reversed because the Yolo County Superior Court did not have jurisdiction over the charged offenses. In the published portion of this opinion, we conclude that Yolo County was a proper venue to try defendant. Unlike determinations of the sufficiency of the evidence to support a guilty verdict where the standard of appellate review is substantial evidence, " 'a trial court's determination of territorial jurisdiction will be upheld as long as there is "some evidence " to support its holding.' " ( People v. Thomas (2012) 53 Cal.4th 1276, 1283, 140 Cal.Rptr.3d 184, 274 P.3d 1170 ( Thomas ), italics added; People v. Chavarria (2013) 213 Cal.App.4th 1364, 1369, 153 Cal.Rptr.3d 378 ( Chavarria ).) The record discloses some evidence that defendant aided and abetted a drug dealer by supplying drugs to the dealer for the purpose of selling the drugs to a third party who had contacted the dealer from Yolo County. The calls from Yolo County initiating the transactions provided the requisite preparatory *136 acts or preparatory effects to establish venue.
In the unpublished portion of this opinion, we address defendant's other contentions. Defendant asserts that the evidence was legally insufficient to support the trial court's determination that his strike allegation had been proven beyond a reasonable doubt. As to sentencing, defendant contends that the trial court should have stayed execution of the sentences imposed on the convictions of possession of methamphetamine for sale pursuant to Penal Code section 654[1] instead of running them concurrently. Defendant further asserts that the abstract of judgment must be modified to delete a Health and Safety Code section 11372.7 drug program fine never orally imposed by the trial court. In supplemental briefing, defendant asserts that, because of a recent change in the law, two prior drug trafficking conviction enhancements *1277 imposed pursuant to former Health and Safety Code section 11370.2 must be struck and the sentences imposed thereon vacated.
We agree with defendant, and the Attorney General concedes, that there was insufficient evidence to sustain the strike allegation. We also agree that the trial court should have stayed execution of the sentences imposed on the convictions of possession of methamphetamine for sale pursuant to section 654, and that the abstract of judgment erroneously includes a drug program fee pursuant to Health and Safety Code section 11372.7, which the trial court did not impose when it orally pronounced judgment. Finally, we agree that the Health and Safety Code section 11370.2 enhancements must be struck and the sentences imposed thereon vacated. We shall remand this matter to the trial court for a new trial on the strike allegation, and for resentencing consistent with this opinion.
In all other respects, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
The Charges and Enhancement Allegations
By amended information, the People charged defendant with two counts of transporting methamphetamine ( Health & Saf. Code, § 11379, subd. (a) ; counts 1 & 4), two counts of sale of methamphetamine ( Health & Saf. Code, § 11379, subd. (a) ; counts 2 & 5), and two counts of possession of methamphetamine for sale ( Health & Saf. Code, § 11378 ; counts 3 & 6). The charges arose from events involving two separate drug transactions initiated in Yolo County and consummated in Sacramento County.
In connection with each count, it was further alleged that defendant had sustained prior convictions of violations of Health and Safety Code section 11351.5, possession of cocaine base for sale, on February 22, 2007, and January 17, 1992, within the meaning of former Health and Safety Code section 11370.2.[2] It was also alleged that defendant previously had been convicted of a serious felony on August 19, 2002, within the meaning of section 667, subdivisions (c) and (e)(1), and that defendant served three prior prison terms within the meaning of section 667.5, subdivision (b), on February 22, 2007, August 19, 2002, and January 17, 1992.
*137 Trial Evidence
Detective Bellamy of the Davis Police Department testified that, during all relevant times, he worked for YONET, the Yolo County Narcotic Enforcement *1278 Team. He testified that, in November 2012, as an undercover officer, he began to purchase methamphetamine from Marc Costa. During the course of his investigation, he purchased methamphetamine from Costa on five occasions. On two of those occasions, Costa did not have methamphetamine on hand, and he had to obtain it from his supplier. This case involves those two instances. Defendant was the supplier on each occasion.
The First Transaction (Counts 1-3)
On November 27, 2012, Bellamy called Costa from his car outside of his office in Yolo County. Bellamy recorded the call, and a recording of the call was played for the jury. Bellamy arranged a time to meet Costa. Bellamy testified that his plan was to buy methamphetamine from Costa. Later that day, Bellamy arrived at Costa's residence in Sacramento wearing a recording device. A recording of the transaction was played for the jury.
Discussing the transaction and what can be heard on the recording, Bellamy testified that he arranged to buy an eighth of an ounce of methamphetamine from Costa. While at Costa's Sacramento home, Costa made a phone call. After Costa completed the phone call, Costa asked Bellamy to accompany him to a liquor store in Sacramento in order to obtain the methamphetamine. Costa drove in one vehicle while Bellamy followed in his vehicle.
At the liquor store, Bellamy and Costa parked next to each other in the parking lot. Costa approached Bellamy's vehicle, and Bellamy gave Costa the buy money. Costa told Bellamy, "I ain't gonna burn you, that's on my daughter. I swear." He told Bellamy he would be about 10 minutes, "cause he's slow sometimes," apparently referring to his supplier. Bellamy waited in his vehicle while Costa walked around the corner.
After about 10 minutes, Costa returned and told Bellamy that the person he was meeting was not there yet, but he had talked to that person over the phone. While waiting, Costa asked Bellamy how long Bellamy had been selling and Bellamy said about a year. Regarding his supplier, Costa said, "He's usually not like this." He then left again, at which time, communicating on the surveillance wire with other officers, Bellamy noted that Costa had indicated that "he was re-upping too," meaning that Costa had to resupply himself. Bellamy explained to the jury, "Costa was a drug dealer, so he was obviously out of drugs, and he was telling me that he had to purchase more methamphetamine himself."
Costa returned, again not having met up with his supplier. Costa then had Bellamy dial the supplier from Bellamy's phone because Costa's phone *1279 battery had run out. Costa spoke with someone on the other end of the call, saying, "It's Marc, again. Hey. Hello? I know, I just got other people waiting, that's all. I just got people waiting too."
Later, Bellamy received a call from the number he had dialed, and he asked Costa, "Is that your boy? Alright, is this your guy right here calling me ... ?" Costa spoke to the caller on Bellamy's phone. Around this time, Bellamy observed a vehicle arrive in the parking lot, and he saw an individual exit the vehicle and walk towards the front doors of the liquor store. Costa then went into the liquor store.
California Highway Patrol Officer David Diaz, another YONET agent, watched the man walk into the store and later identified *138 him as defendant. Diaz went into the store where he observed defendant and Costa standing next to each other in the back, facing one another. They were close enough to have a quiet conversation. The store shelves blocked Diaz's view of their hands. The two men separated when Diaz walked in.
Costa returned to Bellamy from the liquor store after approximately five minutes with several bags of methamphetamine, one of which he gave to Bellamy. On cross-examination, Bellamy acknowledged that he did not see what occurred in the liquor store, and he did not know whether anyone in the liquor store gave Costa drugs.
Detective Alisha Slater, who was the YONET case agent on this investigation, testified that she observed a silver 2012 Ford enter the liquor store parking lot when Bellamy was there. From the vehicle's license plate, she determined that it was registered to PV Holding Corporation, a rental car corporation in Los Angeles. Slater followed the vehicle after it left the parking lot and observed the driver engage in counter-surveillance driving techniques in an apparent attempt to avoid being followed or to detect vehicles following him.
The Second Transaction (Counts 4-6)
Bellamy purchased methamphetamine from Costa again on the night of January 8, 2013. As before, Bellamy called Costa from Yolo County to set up the transaction.
Bellamy met Costa in the same liquor store parking lot in Sacramento. After Bellamy arrived, Costa placed a call which Bellamy believed to be to Costa's supplier. Costa asked Bellamy if he wanted to conduct the transaction like the last time, and Bellamy asked Costa if his "connect" would be upset if he accompanied Costa. Costa said it would not be a problem and suggested *1280 they go in Bellamy's car. Costa then got into Bellamy's car, and they drove to a school in a Sacramento residential area approximately six blocks from the liquor store.
While they were waiting in Bellamy's car, Costa placed a call, and Bellamy heard the recipient respond: "Hey man, quit blowing me up." Costa told the person on the phone, "I know man, I'm not blowing you up, but I came up here in his car and I left my keys in my car on accident at the liquor store." (Italics added.) The person then asked Costa, "Which one you at?" Costa, replied, "I'm at the school." The person then asked, "And what kind of car your boy in?" (italics added) and Costa responded, "I'm in a black car, a black Mustang. I'm right here." Costa asked if the person he was talking to was "pulling up right now," to which the person on the phone responded, "Yeah." A pickup truck pulled up next to Bellamy's car.
Bellamy gave Costa the buy money just before Costa got out of the car and went to the pickup. When Costa opened the passenger door of the pickup, the interior light illuminated and Bellamy observed defendant in the driver's seat. Defendant was the only occupant of the vehicle. Defendant and Bellamy looked at each other. Costa and defendant then drove down the street the length of the block, made a U-turn, and returned to Bellamy's location. Costa opened the truck's passenger door, and the dome light illuminated and Bellamy saw defendant in the driver's seat. Again, both defendant and Bellamy looked at one another. Costa then got back into Bellamy's vehicle.
Costa gave Bellamy what appeared to be all of the methamphetamine he had, a single bag. When Bellamy asked Costa whether he "g[o]t some too," Costa responded, *139 "I didn't get none. I'm doing bad right now cause I owe him money. So he ain't giving me nothing right now. But if you could kick me a little, that'd be cool." Costa told Bellamy that he recently lost money gambling and he owed defendant approximately $400. Bellamy testified that when someone brokers a deal for a buyer, it is typical for a buyer to "kick ... down either a portion of the product or some money" to the broker. Instead of giving Costa a portion of the methamphetamine, Bellamy gave Costa $20 for his role in brokering the deal.
Additional Evidence
Bellamy testified that he made three other purchases from Costa. One took place in West Sacramento, Yolo County. The other two took place at Costa's home in Sacramento.
Detective Slater determined that PV Holding Corporation of Los Angeles owned the vehicles defendant drove during transactions. Slater later learned *1281 that defendant's wife or girlfriend worked for a rental car company through which she would get rental cars that defendant would use. When defendant was arrested four months later, he was driving another vehicle registered to PV Holding Corporation. After his arrest, defendant provided as his phone number the same number Bellamy had called at Costa's direction during the first transaction. Defendant admitted knowing Costa.
The parties stipulated that the substance Bellamy purchased from Costa during the first transaction consisted of 2.58 grams of methamphetamine, and that the substance Bellamy purchased from Costa during the second transaction consisted of 6.00 grams of methamphetamine.
Defendant presented no evidence.
Verdicts, Bifurcated Trial on Enhancements, and Sentencing
The jury found defendant guilty of two counts of transporting methamphetamine ( Health & Saf. Code, § 11379, subd. (a) ; counts 1 & 4), two counts of sale of methamphetamine ( Health & Saf. Code, § 11379, subd. (a) ; counts 2 & 5), and two counts of possession of methamphetamine for sale ( Health & Saf. Code, § 11378 ; counts 3 & 6).
The trial court had previously granted defendant's request to bifurcate trial on the enhancements, and defendant waived jury trial. The trial court found beyond a reasonable doubt that defendant had sustained two prior convictions for violation of Health and Safety Code section 11351.5 and thus found true the enhancement allegations pursuant to former Health and Safety Code section 11370.2. The trial court further found the strike allegation and two prior prison term enhancement allegations to have been proven beyond a reasonable doubt. However, seemingly based on the absence of a "five-year washout period," the trial court concluded that the prosecution failed to prove the third prior prison commitment allegation beyond a reasonable doubt.
Later, the court denied defendant's Romero motion[3] to dismiss the prior strike conviction allegation. The court sentenced defendant to an aggregate determinate term of 16 years, calculated as follows: on count 2, sale of methamphetamine ( Health & Saf. Code, § 11379, subd. (a) ), *140 the upper term of four years doubled to eight years because of the prior strike conviction pursuant to section 667, subdivision (e)(1); on count 5, sale of methamphetamine, a consecutive term of one year (one-third the midterm) *1282 doubled to two years because of the prior strike conviction; on counts 3 and 6, possession of methamphetamine for sale ( Health & Saf. Code, § 11378 ), concurrent upper terms of three years doubled to six years; on counts 1 and 4, transporting methamphetamine ( Health & Saf. Code, § 11379, subd. (a) ), the upper term of four years doubled to eight years, with execution of those sentences stayed pursuant to section 654 ; and two consecutive three-year terms pursuant to former Health and Safety Code section 11370.2, subdivision (c), for defendant's two prior convictions of Health and Safety Code section 11351.5. The trial court struck the two prior prison commitment findings in the interest of justice.
DISCUSSION
I. Venue
A. Additional Background and Defendant's Contentions
After the preliminary hearing, defendant filed a pretrial motion to dismiss the information on the ground that the Yolo County trial court lacked jurisdiction over him. Defendant asserted that the charges against him should be dismissed because he did not commit a public offense within the territorial jurisdiction where he was charged. Defendant pointed out that, while he was alleged to have participated in two drug transactions, he was not the individual contacted by law enforcement in Yolo County to arrange the transactions. Defendant also noted that, relevant to the acts alleged here, he was never in Yolo County. Additionally, the calls from Costa to him were both placed and received in Sacramento County. According to defendant, "[t]here was not a single fact in evidence at the preliminary hearing supporting the notion that [defendant] was linked to, or involved in a crime that occurred in Yolo County."
Defendant further asserted that, contrary to the prosecutor's contention at the preliminary hearing, the evidence was insufficient to establish an ongoing conspiracy between him and Costa. Defendant argued that a criminal conspiracy requires a common scheme or plan between two or more individuals to commit a crime. He asserted that a criminal conspiracy is not established where one individual sells drugs to a second individual, who, in turn, sells the drugs to a third person. According to defendant, in such a situation, there is no common scheme or plan between the first two individuals. Defendant argued that this was, at most, what the evidence would tend to prove in this case.
The prosecutor opposed defendant's motion, asserting that an offense may be prosecuted in a county where preliminary arrangements for the crime were *1283 made, even where those arrangements did not constitute an essential element of the completed crime. According to the prosecutor, a crime could be prosecuted in any county affected by the transaction, regardless of where the acts constituting the essential elements of the crime took place. In asserting that Yolo County was a proper venue, the prosecutor relied on section 781, pertaining to offenses committed in more than one jurisdictional territory. He argued that acts necessary for the preparation of the crime, specifically the telephone calls from Bellamy to Costa to set up the drug transactions, were made from Yolo County, and without these phone calls, Costa would not have called defendant to arrange for the procurement of methamphetamine on the charged occasions. The *141 prosecutor further asserted that, at the least, the evidence supported the theory that defendant was aiding and abetting Costa's crimes, if not acting as a co-conspirator, and defendant was responsible for the crimes committed by Costa regardless of where they occurred. Finally, the prosecutor asserted that the mere fact that Sacramento County would be a proper venue to prosecute defendant did not mean that Yolo County was an improper venue.
During oral argument on the motion, defendant argued that the cases on which the prosecutor relied in opposition to his motion were inapposite because, unlike the circumstances here, in those cases, some of the crimes, or at least some planning and preparation, occurred where the defendants were prosecuted. Conversely, here, defendant was never in Yolo County, never planned to commit any crimes in Yolo County, and did not perform acts which could be deemed planning crimes in Yolo County.
The prosecutor asserted that the connection to Yolo County was through Costa and Costa committed acts in preparation for the charged crimes by communicating with Bellamy who was in Yolo County at the time. According to the prosecutor, "by involving himself in ... Costa's crimes [defendant], whether knowingly or not, has proven to be amenable to jurisdiction in Yolo County."
The trial court denied defendant's motion. The court ruled: "The jurisdiction over ... Costa is solid and part of the acts he did in committing the crime alleged here have to do with interactions with [defendant]. Whether that's in another county or not, Yolo County has jurisdiction over ... Costa, and participation in the crime out of Yolo County by [defendant] means that he is also under Yolo County's jurisdiction, and so this case is going to go forward."
On appeal, defendant asserts that the judgment should be reversed because the Yolo County Superior Court did not have territorial jurisdiction over the offenses at issue here. He maintains that the evidence was insufficient to *1284 support any inference that defendant entered into an agreement with Costa to sell methamphetamine to Bellamy. Therefore, according to defendant, the evidence does not establish territorial jurisdiction in Yolo County. Defendant asserts that, at most, the evidence supports the conclusion that he sold methamphetamine to Costa in Sacramento County following Costa's calls to him from Sacramento County. In other words, according to defendant, any crimes in which he was implicated took place entirely within Sacramento County. Defendant contends that he cannot be connected to the only relevant occurrence in Yolo County-the calls Bellamy placed to Costa-because the evidence is insufficient to establish defendant's guilt under either a conspiracy theory or an aider-and-abettor theory. Defendant mistakenly relies on the substantial evidence standard to support this assertion.
B. Venue Principles and Standard of Review
"[E]xcept as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed." (§ 777.) "The words 'jurisdictional territory' when used with reference to a court, mean the city and county, county, city, township, or other limited territory over which the criminal jurisdiction of the court extends, as provided by law, and in case of a superior court mean the county in which the court sits." (§ 691, subd. (b).) "The terms 'venue' and 'territorial jurisdiction' are synonymous." ( *142 Thomas, supra , 53 Cal.4th at p. 1282, 140 Cal.Rptr.3d 184, 274 P.3d 1170.) " 'Venue or territorial jurisdiction establishes the proper place for trial, but ... does not affect the power of a court to try a case.' " ( Ibid. ) To avoid confusion, courts generally use the term "venue" to refer to the question of territorial jurisdiction. ( People v. Simon (2001) 25 Cal.4th 1082, 1096-1097, 108 Cal.Rptr.2d 385, 25 P.3d 598 ( Simon ).)[4] Accordingly, we will refer to the issue before us as one involving proper venue, not jurisdiction. *1285 Courts have identified several purposes of the venue requirement. It " ' "promotes the convenience of both parties in obtaining evidence and securing the presence of witnesses." ' " ( Thomas, supra , 53 Cal.4th at p. 1287, 140 Cal.Rptr.3d 184, 274 P.3d 1170.) "It 'provide[s] for trial in a county that bears a reasonable relationship' to the offenses." ( Ibid . ) It also serves to " ' " 'safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place.' " ' " ( Ibid . ) Additionally, the venue requirement provides "participation on the part of the community affected" ( People v. Posey (2004) 32 Cal.4th 193, 204, 8 Cal.Rptr.3d 551, 82 P.3d 755 ( Posey ) ), and thus protects " 'the interests of the community in which a crime or related activity occurs, "vindicat[ing] the community's right to sit in judgment on crimes committed within its territory." ' " ( Thomas , at p. 1282, 140 Cal.Rptr.3d 184, 274 P.3d 1170 ; Posey , at p. 210, 8 Cal.Rptr.3d 551, 82 P.3d 755.)
"There are statutory exceptions to the general rule that a crime should be prosecuted in the county where it is committed." ( Thomas, supra , 53 Cal.4th at p. 1283, 140 Cal.Rptr.3d 184, 274 P.3d 1170.) Section 781 is one such exception. ( Ibid . ) It provides in pertinent part: "[W]hen a public offense is committed in part in one jurisdictional territory and in part in another jurisdictional territory, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction for the offense is in any competent court within either jurisdictional territory." (§ 781, italics added.) Our high court has counseled that " ' "[s]ection 781 is remedial and, thus, we construe the statute liberally to achieve its purpose of expanding criminal jurisdiction beyond rigid common law limits. [Citations.] We therefore interpret section 781 in a commonsense *143 manner with proper regard for the facts and circumstances of the case rather than technical niceties." ' " ( Thomas , at p. 1283, 140 Cal.Rptr.3d 184, 274 P.3d 1170.)
In interpreting section 781, our high court has "found proper venue in a county where 'only preparatory acts have occurred' and where those preparatory acts were not themselves elements of the offense." ( Thomas, supra , 53 Cal.4th at p. 1284, 140 Cal.Rptr.3d 184, 274 P.3d 1170.) Additionally, the court has held that "venue can be based on the effects of preparatory acts (what [the court has] called 'preparatory effects')," such as a defendant's actions in receiving pages from an undercover officer located in a particular county or placing calls to the officer in that county in order to arrange for drug transactions, notwithstanding the fact that the drug transactions were consummated in a different county. ( Id . at p. 1285, 140 Cal.Rptr.3d 184, 274 P.3d 1170 ; see Posey, supra , 32 Cal.4th at p. 219, 8 Cal.Rptr.3d 551, 82 P.3d 755.)
At trial, "[t]he prosecution has the burden of proving the facts supporting venue by a preponderance of the evidence." ( *1286 Thomas, supra , 53 Cal.4th at p. 1283, 140 Cal.Rptr.3d 184, 274 P.3d 1170.) However, as we have noted, " '[o]n review, a trial court's determination of territorial jurisdiction will be upheld as long as there is "some evidence " to support its holding.' " ( Ibid ., italics added; Chavarria, supra , 213 Cal.App.4th at p. 1369, 153 Cal.Rptr.3d 378.)
C. Direct Actions, Preparatory Acts, and Preparatory Effects
It is undisputed that, at all relevant times, defendant was not in Yolo County and did not commit any act in Yolo County in connection with this case. It is also undisputed that defendant did not call Bellamy while Bellamy was in Yolo County and Bellamy did not call defendant from Yolo County. Indeed, Bellamy and defendant never spoke to one another. Nor did Costa call and speak to defendant from Yolo County. In short, defendant did not personally undertake any action in this case directly connecting him to Yolo County.
The parties discuss cases in which preparatory acts or preparatory effects were sufficient to render particular counties appropriate venues pursuant to section 781. Most of these cases involve a defendant who engaged in direct acts in the county in which the case was tried or whose acts directly affected that county, such as Thomas, supra , 53 Cal.4th 1276, 140 Cal.Rptr.3d 184, 274 P.3d 1170, and Posey, supra , 32 Cal.4th 193, 8 Cal.Rptr.3d 551, 82 P.3d 755. In this part of the Discussion, we shall consider Thomas and Posey and direct actions, preparatory acts, and preparatory effects. In part I.D. of the Discussion, post , we shall discuss Chavarria, supra , 213 Cal.App.4th 1364, 153 Cal.Rptr.3d 378, a case upon which the People rely involving acts of an accomplice, which is more on point here.
In Thomas, supra , 53 Cal.4th 1276, 140 Cal.Rptr.3d 184, 274 P.3d 1170, the defendant lived in Madera County. ( Id . at p. 1279, 140 Cal.Rptr.3d 184, 274 P.3d 1170.) The trial court found that Madera County was the defendant's " 'base of operations' " where he participated in gang activities, including the sale of drugs. ( Id . at p. 1287, 140 Cal.Rptr.3d 184, 274 P.3d 1170.) The defendant was found to be in possession of a key and a receipt for a storage locker in Fresno County which contained drugs and a firearm. ( Ibid . ) Our high court rejected the Court of Appeal's determination that the drugs and firearm found in Fresno County did not provide a basis for prosecuting the defendant in Madera County for *144 possession for sale of a controlled substance and possession of a firearm by a convicted felon. ( Ibid . ) The Thomas court concluded that Madera County was a proper venue under section 781 because the defendant committed preparatory acts in Madera County and because the effects of the defendant's unlawful possession of drugs and the firearm in the Fresno County storage locker "would be felt in Madera County" based on the defendant's "larger plan to sell drugs in Madera County." ( Thomas , at p. 1287, 140 Cal.Rptr.3d 184, 274 P.3d 1170.) The defendant's preparatory acts in Madera County on which our high court relied in its *1287 analysis included obtaining an apartment in which cash was found hidden in a clothes dryer. He also secured two cell phones and a pager in Madera County. ( Ibid . ) Additionally, our high court relied on effects felt in Madera County, which essentially consisted of the defendant's activities in selling drugs and participating in gang activities in that county. ( Ibid . ) The Thomas court found that ample evidence supported the trial court's finding that the defendant lived in and sold drugs in Madera County, and that the " 'only thing absent [was] his inventory,' " which was " 'just across the county line.' " ( Ibid . )
In Posey, supra , 32 Cal.4th 193, 8 Cal.Rptr.3d 551, 82 P.3d 755, the defendant's associate, in San Francisco, responding to pages from an undercover police officer who was in Marin County, called the officer and had him speak over the phone with the defendant about a purchase of cocaine base. ( Id . at p. 202, 8 Cal.Rptr.3d 551, 82 P.3d 755.) The officer agreed to purchase two ounces of cocaine base from the defendant, and the defendant agreed to meet the officer at a location in Marin County. ( Ibid . ) Later, the defendant called the officer back and changed the location of the sale to a site in San Francisco, where the transaction was ultimately consummated. ( Ibid . ) Several days later, the officer, while in Marin County, again paged the defendant's associate, who was in San Francisco County. She called the officer back and again had him speak with the defendant. ( Ibid . ) The officer and the defendant agreed to another drug transaction. ( Ibid . ) As he had before, the officer tried to get the defendant to come to Marin County. ( Ibid . ) The defendant refused, and, ultimately, the officer agreed to meet the defendant at the location of the previous transaction in San Francisco where the transaction was consummated later that evening. ( Id . at pp. 202, 222, 8 Cal.Rptr.3d 551, 82 P.3d 755.) Our high court concluded that venue in Marin County was proper under section 781, notwithstanding the fact that the drug transactions took place in San Francisco. ( Posey , at pp. 220-221, 8 Cal.Rptr.3d 551, 82 P.3d 755.) The Posey court reasoned that the words in section 781, " 'effects ... requisite to the consummation' of a crime establishing venue in a county should be liberally construed to embrace preparatory effects, such as the placement of a telephone call into a county leading to a crime." ( Posey , at p. 219, 8 Cal.Rptr.3d 551, 82 P.3d 755.) Thus, the court concluded that the defendant's several telephone calls to Marin County "constituted 'effects ... requisite to the consummation' of the crimes in question" within the meaning of section 781. ( Posey , at p. 221, 8 Cal.Rptr.3d 551, 82 P.3d 755.)
Importantly, the Posey court rejected the defendant's argument that section 781 requires the defendant to engage in acts deliberately targeting a county or its residents. ( Posey, supra , 32 Cal.4th at p. 220, 8 Cal.Rptr.3d 551, 82 P.3d 755.) There is no requirement that "the defendant possess any mental state whatever with respect to a county, for purposes of venue. The requirement of 'effects' in a county 'requisite to the consummation' of a crime *145 satisfies the need for a reasonable relationship between the crime and the county." ( Ibid. ) The court reemphasized this point later in the opinion, stating, "Under section 781, *1288 venue turns on the presence or absence, in a county, of acts or effects constituting the crime or requisite to the commission of the crime-not on the defendant's state of mind or on the soundness of any beliefs that he or she might hold as to the location of those acts or effects." ( Id . at p. 221, 8 Cal.Rptr.3d 551, 82 P.3d 755.)
As we have noted, in each of these cases, the defendants themselves engaged in preparatory acts, or directly committed acts with preparatory effects, in the county where they would eventually face prosecution. Here, it is undisputed that the only connection to Yolo County was Bellamy's calls from Yolo County to Costa in Sacramento County to arrange the purchase of methamphetamine from Costa. As defendant asserted in his motion before the trial court, he was not contacted by Bellamy from Yolo County to arrange the transactions, and, relevant to the acts alleged here, he was never in Yolo County. Costa placed his calls to defendant from Sacramento County. On these facts, no direct acts by defendant, or effects resulting directly from defendant's actions, occurred in Yolo County. However, as we discuss next, venue was nonetheless proper because of defendant's participation with an accessory who committed direct acts, and whose conduct would have had direct effects, in Yolo County.
D. Aiding and Abetting
"A person can be guilty of a crime as a perpetrator or as an aider and abettor." ( People v. Nelson (2015) 240 Cal.App.4th 488, 496, 192 Cal.Rptr.3d 760, citing § 31.) " 'A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime.' " ( People v. Hill (1998) 17 Cal.4th 800, 851, 72 Cal.Rptr.2d 656, 952 P.2d 673.) A defendant does not need to actually have been present when the crime was committed to be liable as an aider and abettor. (§ 31; People v. Bohmer (1975) 46 Cal.App.3d 185, 199, 120 Cal.Rptr. 136 ; People v. Lopez (1963) 213 Cal.App.2d 668, 673-674, 28 Cal.Rptr. 912 [defendant was liable as an aider and abettor even though he was not present at the time of a sale to an undercover officer].) One who aids and abets in the commission of a crime may be subject to prosecution for that crime in any county having jurisdiction over the offense. ( People v. Benenato (1946) 77 Cal.App.2d 350, 364, 175 P.2d 296 [if the defendant did aid and abet the attempt to commit the crime of pandering, she must be deemed to have been a principal in that crime and subject to prosecution therefor in any county having jurisdiction of the *1289 offense, citing § 31], disapproved on another ground in In re Wright (1967) 65 Cal.2d 650, 654-655 & fn. 3, 56 Cal.Rptr. 110, 422 P.2d 998.)
The People rely on Chavarria, supra , 213 Cal.App.4th 1364, 153 Cal.Rptr.3d 378, for the proposition that venue is proper when a defendant has aided and abetted another person who committed preparatory acts or whose conduct had preparatory effects in the county where the case was tried. In Chavarria , the police were investigating a Los Angeles-based enterprise involved in selling heroin to residents of Ventura County through means of a delivery service that would be dispatched upon placement of a phone order for the drug. ( Id . at p. 1367, 153 Cal.Rptr.3d 378.) In the presence of police in Ventura County, an *146 informant placed three calls from Ventura County to the service and negotiated a purchase. ( Id. at p. 1367 & fn. 2, 153 Cal.Rptr.3d 378.) As arranged, the sale occurred at a location in Los Angeles County. ( Id . at p. 1367, 153 Cal.Rptr.3d 378.) The defendant arrived at the designated location and sold heroin to the informant, after which he was arrested. ( Ibid . ) Just before the sale, the defendant made a cell phone call in which he asked whether he was supposed to sell 11 grams for the price of 10. A phone later recovered from the defendant revealed that the call was made to the same number the informant had called to place the order. ( Ibid . ) The defendant did not take part in the earlier phone negotiations in which the informant had arranged for the purchase. ( Id . at p. 1366, 153 Cal.Rptr.3d 378.)
Applying section 781 and relying on the analysis in Posey , the Chavarria court determined that the trial court correctly denied the defendant's motion to dismiss on the ground that Ventura County was not a proper venue. ( Chavarria, supra , 213 Cal.App.4th at pp. 1370-1371, 153 Cal.Rptr.3d 378.) The Chavarria court acknowledged that, unlike the circumstances in Posey , the defendant did not initiate or participate in any of the telephone calls upon which the finding of proper venue in Ventura County was based. ( Chavarria , at p. 1370, 153 Cal.Rptr.3d 378.) However, the Chavarria court determined that "this distinction is of no moment. Although the court in Posey emphasized the fact that the defendant in that case had made several phone calls to the county in which he was prosecuted [citation], nothing in the opinion suggests that this fact would have been essential to a finding of proper venue in that case. Section 781 does not refer to any requirement that the acts or effects requisite to consummation of the offense must directly involve the defendant who is charged with the crime ." ( Chavarria , at p. 1370, 153 Cal.Rptr.3d 378, italics added.) The court concluded: "[T ]he fact that appellant's accomplice negotiated the drug sale over the phone with an individual physically present in Ventura County is sufficient to establish venue in that county . Although the call was made from Ventura County to Los Angeles County, the call itself-i.e., the discussions during which the drug sale was negotiated-took place in both counties. Giving section 781 the requisite liberal construction, this qualifies as a preparatory act or effect 'requisite to the consummation of the offense occur[ring] in two or more *1290 jurisdictional territories.' Accordingly, the case was subject to prosecution in either of the counties in which the call took place." ( Chavarria , at p. 1371, 153 Cal.Rptr.3d 378, italics added.)
Among other things, in its analysis the Chavarria court noted that the court in Posey "made clear we should not 'insert[ ] into section 781 something that is not present' " ( Chavarria, supra , 213 Cal.App.4th at p. 1370, 153 Cal.Rptr.3d 378 ), referring to imposing a requirement that the acts or effects establishing proper venue must directly involve the charged defendant. Nor should courts "construe the statute in a manner 'that contracts venue rather than extends it.' ( Posey , [supra , 32 Cal.4th] at p. 220 [8 Cal.Rptr.3d 551, 82 P.3d 755].)" ( Chavarria , at pp. 1370-1371, 153 Cal.Rptr.3d 378.) The Chavarria court also noted that a defendant's mental state is irrelevant to the determination of venue. ( Id . at p. 1371, 153 Cal.Rptr.3d 378, citing Posey , at p. 220, 8 Cal.Rptr.3d 551, 82 P.3d 755.)
Discussing the justifications for the venue requirement, the court in Chavarria observed: "The residents of Ventura County undoubtedly have a legitimate interest in the local prosecution of individuals who are responsible for the influx of illegal *147 drugs into their community, particularly when those individuals act pursuant to a criminal enterprise that allows purchasers to initiate and negotiate drug sales from within that community." ( Chavarria, supra , 213 Cal.App.4th at p. 1371, 153 Cal.Rptr.3d 378.)
Defendant here points out that Chavarria is factually distinguishable from the instant case. Unlike the instant case, the defendant in Chavarria was the person who delivered the drugs to the out-of-county buyer on behalf of the accomplice. Additionally, during the transaction, the defendant in Chavarria called the phone number the buyer had originally called to place the order to confirm the agreed-upon price. According to defendant, there was no similar evidence of accomplice liability in the instant case.
We agree the instant case is factually different from Chavarria . Moreover, the parties did not cite and we have not found any cases involving the scenario presented here, where the supplier of the drugs has no contact with the out-of-county buyer. However, we find this distinction to be without a difference, because, like in Chavarria , venue here was based on the actions of an accomplice to the offenses for which defendant was convicted. Based on the calls from Bellamy in Yolo County to Costa in Sacramento County to arrange the drug transactions, Yolo County was a proper venue for prosecution of Costa because those calls constituted preparatory acts or they had preparatory effects in Yolo County, notwithstanding the fact that the drug purchases took place in Sacramento County. (See Posey, supra , 32 Cal.4th at pp. 219-222, 8 Cal.Rptr.3d 551, 82 P.3d 755.) Thus, we focus our review on determining whether there is evidence that supports a finding that defendant (the supplier) aided and *1291 abetted Costa (the dealer) in selling to Bellamy (the out-of-county buyer).[5] Before we discuss the evidence as to each transaction, we revisit our standard of review.
Without citation to authority related to venue matters, defendant applies to the venue issue here the standard employed in reviewing for the sufficiency of evidence to support verdicts of guilt or factual findings in other contexts. For example, defendant relies on a civil case for the proposition that the resolution of questions of fact concerning the establishment of historical or physical facts is to be reviewed under the substantial evidence test. ( Crocker National Bank v. City and County of San Francisco (1989) 49 Cal.3d 881, 888, 264 Cal.Rptr. 139, 782 P.2d 278 [addressing the standard of review on appeal for a trial court's classification of a particular item of personal property as a fixture of real property for purposes of taxation].) Defendant goes on to point out that substantial evidence must be reasonable, credible, and of solid value, and may not be based on speculative possibilities or conjecture, citing People v. Johnson (1980) 26 Cal.3d 557, 578, 162 Cal.Rptr. 431, 606 P.2d 738 (setting forth the constitutional standard of review for determining the sufficiency of the evidence supporting a criminal conviction), and Kuhn v. Department of General Services (1994) 22 Cal.App.4th 1627, 1633, 29 Cal.Rptr.2d 191 (applying the substantial evidence test to appellate review of State Personnel Board determinations). But as we have noted, on appellate review " 'a trial court's determination of territorial jurisdiction will be upheld as long as there *148 is "some evidence " to support its holding.' " ( Thomas, supra , 53 Cal.4th at p. 1283, 140 Cal.Rptr.3d 184, 274 P.3d 1170, italics added; Chavarria, supra , 213 Cal.App.4th at p. 1369, 153 Cal.Rptr.3d 378.) Accordingly, we do not apply the substantial evidence test here.[6] Rather we look for "some evidence" supporting the trial court's determination that Yolo County was a proper venue.
As noted, defendant acknowledges that venue in Yolo County would be proper as to him if he was an accomplice to Costa's crimes as to which there was proper venue in Yolo County. However, he asserts the evidence is insufficient to support a finding that defendant participated in Costa's crimes. He asserts that the evidence is insufficient to show that defendant knew Costa would sell the methamphetamine to Bellamy and that he had the specific intent that the drugs be sold to Bellamy. Defendant argues that only speculation supports the inference that he was aware that Costa would sell the methamphetamine to Bellamy. We disagree. As we shall discuss, reasonable *1292 inferences establish defendant's knowledge of Costa's purpose and defendant's specific intent to aid Costa in selling the methamphetamine to a third party.
We first note that a reasonable inference can be drawn from the evidence that defendant had a supplier-dealer relationship with Costa; he supplied Costa with methamphetamine to be sold to third parties. The evidence showed that defendant supplied Costa twice, once in November and again during the following January. While waiting for his supplier to show up at the liquor store during the first transaction, Costa told Bellamy "he's slow sometimes." Later during the first transaction, again referring to his supplier and apparently to reassure Bellamy, Costa said, "He's usually not like this." While waiting for Costa to return from around the corner, Bellamy indicated on the wire that Costa was re-upping, i.e., resupplying himself. As Bellamy explained to the jury, "Costa was a drug dealer, so he was obviously out of drugs, and he was telling me that he had to purchase more methamphetamine himself." During the second transaction, while Costa and Bellamy were parked waiting for defendant, Costa spoke with defendant on the phone. Defendant asked, "Which one you at?" and Costa replied, "I'm at the school." From this exchange, it can be reasonably inferred that the location where Costa had Bellamy park was one of multiple locations where Costa was accustomed to meeting defendant to obtain drugs from him. This evidence of an ongoing supplier-dealer relationship buttresses the evidence showing aiding and abetting as to the two transactions at issue here.
Regarding the first transaction, when Costa returned to the liquor store parking lot after again not having met with his supplier, he had Bellamy dial the supplier from Bellamy's phone because his phone battery had run out. When the call was returned, Bellamy confirmed with Costa that it was the supplier calling by asking, "Is that your boy? Alright, is this your guy right here calling me ... ?" He handed the phone to Costa who then spoke with the person on the other end of the call. Costa said, "It's Marc, again. Hey. Hello? I know, I just got other people waiting, that's all. I just got people waiting too ." (Italics added.) Costa's reference to having other people waiting is some evidence that defendant knew Costa was going to sell the methamphetamine to third parties, and thus when defendant ultimately supplied *149 methamphetamine to Costa on that occasion, defendant knowingly and intentionally aided and abetted Costa in selling the drug to a third party.
Regarding the second transaction, Bellamy asked Costa if it would be alright to accompany him to his meeting with his "connect." While Costa and Bellamy were waiting in Bellamy's car, Costa placed a call, and Bellamy heard the recipient respond: "Hey man, quit blowing me up." Costa told the person on the phone, "I know man, I'm not blowing you up, but I came up *1293 here in his car and I left my keys in my car on accident at the liquor store." (Italics added.) After confirming Costa's location, the individual on the other end of the call then asked, "And what kind of car your boy in?" (Italics added.) It is reasonable to infer from Costa's use of the pronoun "his" that he had previously told defendant about the third party he was with. It would certainly be odd to say, "I came up here in his car" without having earlier told defendant about that person. The inference that Costa told defendant about his buyer is reinforced by defendant's question, asking "what kind of car your boy in?" This is additional evidence establishing that defendant knew Costa was a middle man on this occasion who had a buyer for the methamphetamine defendant was going to supply.
When Costa returned from a short ride with defendant, he had only one bag of methamphetamine, unlike on the first occasion where Costa retained the other bags he had obtained from defendant. He turned over that single bag to Bellamy. When Bellamy asked Costa whether he got any, Costa said he had not. He explained, "I'm doing bad right now cause I owe him money. So he ain't giving me nothing right now . But if you could kick me a little, that'd be cool." (Italics added.) Costa had recently lost money gambling, and he owed defendant approximately $400. Costa's reference to his debt and the fact that defendant was not providing him with any drugs "right now" is additional evidence establishing that defendant knew he was not providing methamphetamine to Costa, but rather he was knowingly aiding and abetting Costa in providing methamphetamine to a third party.
Defendant asserts that the telephone exchange did not imply that Costa was going to sell the methamphetamine to Bellamy. According to defendant, it was a way for Costa to inform defendant of "an independent reason for ... Bellamy to be arriving in the same car as ... Costa after leaving his keys in his own car." The reference to the driver and owner of the car Costa was in as " 'your boy,' " according to defendant, implied nothing more than a reference to the person who gave Costa a ride. These may be inferences that could be drawn from the evidence, but they do not negate the inferences we discussed ante . Indeed, defendant's assertion does not explain Costa's use of the word "his" in explaining, "I came up here in his car." If Costa was merely trying to explain the car he was in, it would be more reasonable to expect him to describe the car and perhaps say he was with someone else. As we have said, in context, the use the word "his" suggests Costa had already told defendant about the third party he was with. Under the circumstances, it is reasonable to infer that he had told defendant about the third party because he was brokering a drug transaction between that person and defendant. Similarly, it can be reasonably inferred that when defendant asked, "[W]hat kind of car your boy in?" he was asking about the car Costa's buyer was in. There would *1294 be no reason to reference "your boy" if defendant was there just to do a deal with Costa and merely needed to know what type of car he was in, as defendant asserts. *150 Defendant also asserts that no inference could be drawn from the evidence that Costa was in debt to defendant. Defendant acknowledges that it can be inferred that, when he met with Costa during the short ride up the street and back, Costa gave defendant money and defendant gave Costa the methamphetamine. But defendant maintains that nothing about the fact Costa had an outstanding debt to defendant implies that defendant knew Costa "would turn around and sell the methamphetamine to ... Bellamy." We disagree. It is reasonable to infer that if Costa owed defendant money, defendant would not have sold Costa methamphetamine; defendant would have just taken Costa's money as payment on the debt without giving Costa a bag of methamphetamine. The evidence here suggests that defendant took the money from Costa knowing that it was the buyer's money, not Costa's, and that the methamphetamine he handed over to Costa was intended for the buyer.
We have noted what we consider to be the reasonable inferences to be drawn from the evidence. We are not required to reconcile the various contrary inferences defendant raises. Again, our review requires only that we look for some evidence supporting the trial court's venue ruling. ( Thomas, supra , 53 Cal.4th at p. 1283, 140 Cal.Rptr.3d 184, 274 P.3d 1170 ; Chavarria, supra , 213 Cal.App.4th at p. 1369, 153 Cal.Rptr.3d 378.) That there are other inferences that could also be drawn does not negate a determination that there is some evidence supporting the trial court's determination that Yolo County was a proper venue. Indeed, even if we were required to engage in a substantial evidence review as defendant maintains, we would look at the record in the light most favorable to the judgment and all reasonable inferences would be drawn in its favor. ( People v. Gonzales and Soliz (2011) 52 Cal.4th 254, 295, 128 Cal.Rptr.3d 417, 256 P.3d 543 ; People v. Nicolas (2017) 8 Cal.App.5th 1165, 1171, 214 Cal.Rptr.3d 467.) We could not reverse merely because the circumstances might also support a contrary finding ( People v. Salazar (2016) 63 Cal.4th 214, 245, 202 Cal.Rptr.3d 638, 371 P.3d 161 ), and reversal would be unwarranted "unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the trial court's finding. ( People v. Bolin (1998) 18 Cal.4th 297, 331, 75 Cal.Rptr.2d 412, 956 P.2d 374.) In any event, we conclude that there was more than just some evidence to support the trial court's venue ruling here.
In concluding that Ventura County was a proper venue in Chavarria , the court observed, "The drug sale of which [the defendant] was convicted was negotiated by his accomplice over the phone with an individual who was physically present in Ventura County. But for that call, there could have been *1295 no sale ," and this constituted "some evidence sufficient to support the finding that preparatory acts or effects requisite to commission of [the defendant]'s crimes took place in Ventura County." ( Chavarria, supra , 213 Cal.App.4th at p. 1371, 153 Cal.Rptr.3d 378.) The People contend the same can be said here, and we agree. But for Bellamy's call to Costa, there would have been no sale to Bellamy for defendant to supply.
While the principal justification for the venue requirement is to protect the accused from the hardship and unfairness of being charged in a remote county, it also protects the interests of the community in which a crime or related activity occurs. ( Chavarria, supra , 213 Cal.App.4th at p. 1371, 153 Cal.Rptr.3d 378.) The flow of drugs into Yolo County was an effect of the phone calls that initiated the transactions in which defendant involved himself. Like the residents of Ventura County in Chavarria , the residents of Yolo County undoubtedly have a legitimate interest in the local prosecution of individuals who are *151 responsible for the influx of illegal drugs into their community. ( Ibid . ) We conclude that Yolo County was a proper venue because defendant aided and abetted an accomplice who engaged in preparatory acts and whose conduct had preparatory effects in that county.
II.-V.**
DISPOSITION
The judgment of conviction is affirmed. The Health and Safety Code section 11370.2 enhancements are struck and the sentences imposed thereon are vacated. We remand the matter to the trial court for (1) a new trial on defendant's prior strike conviction allegation, and (2) resentencing consistent with this opinion.
We concur:
ROBIE, Acting P. J.
DUARTE, J.

Further undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

The information erroneously cited subdivision (a) of Health and Safety Code section 11370.2 rather than subdivision (c).

People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 529-530, 53 Cal.Rptr.2d 789, 917 P.2d 628.

As our high court has noted, "In analyzing the procedural requirements governing venue, it is important to recognize ... that although the applicable California statutes generally employ the terms 'jurisdiction' and 'jurisdictional territory' in designating the proper venue for the trial of a criminal proceeding [citation], the issue of venue in criminal as well as in civil cases does not involve a question of 'fundamental' or 'subject matter' jurisdiction over a proceeding. As a leading treatise explains: 'If the crime is one over which California can and does exercise its legislative jurisdiction because it was committed in whole or in part within the state's territorial borders, California courts have jurisdiction to try the defendant. [Citation.] Moreover, if the charge is brought in a competent court (i.e., superior court for felonies ... ), that court , no matter where located in the state , may have subject matter jurisdiction of the offense. [Citation.] [¶] Thus, venue is not jurisdictional in the fundamental sense ; and, both in civil and criminal cases, a change of venue from the superior court of one county to the same court in another county does not affect its jurisdiction over the subject matter of the cause.' " (Simon, supra , 25 Cal.4th at p. 1096, 108 Cal.Rptr.2d 385, 25 P.3d 598, quoting 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Jurisdiction and Venue, § 45, p. 135.) "Although this point is a basic one, use of the term 'jurisdiction' at times has created confusion in the venue context .... [A]ll modern decisions recognize that criminal venue statutes do not involve a court's jurisdiction in the fundamental sense of subject matter jurisdiction." (Simon , at pp. 1096-1097, 108 Cal.Rptr.2d 385, 25 P.3d 598, fns. omitted.)

Because we conclude there was evidence supporting a finding that defendant aided and abetted Costa in selling methamphetamine to Bellamy, we need not address the alternative theory that defendant and Costa conspired to sell methamphetamine to a third person. Aiding and abetting theory connects defendant to his accomplice.

The jury was instructed on both aider and abettor liability and conspiracy liability. However, defendant does not challenge his convictions on the ground that there was not substantial evidence supporting a finding of guilt based on his liability under these theories.

See footnote *, ante .